**SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,**

v.

**The KELLER CORPORATION, Mid-Continent Securities Corp., Earl Bullock, F. Ray Bess, Defendants-Appellants.**

**No. 14116.**

United States Court of Appeals Seventh Circuit.

Oct. 8, 1963.

Don A. Tabbert, John R. Carr, Jr., Donald A. Schabel, Indianapolis, Ind., Buschmann, Carr, Schabel & Tabbert, Indianapolis, Ind., of counsel, for appellants.

Walter P. North, Washington, D. C., Thomas B. Hart, Chicago, Ill., David W. Mernitz, Asst. U. S. Atty., Indianapolis, Ind., David Ferber, Associate General Counsel, John A. Dudley, Sp. Counsel, Robert L. McCloskey, Attorney, Securities and Exchange Commission, Washington, D. C., for appellee.

Before HASTINGS, Chief Judge, and DUFFY and CASTLE, Circuit Judges.

HASTINGS, Chief Judge.

This action was brought in the district court by plaintiff Securities and Exchange Commission (SEC) against defendants, The Keller Corporation (Kellco), Mid-Continent Securities Corporation (Midco), Earl Bullock, F. Ray Bess, Leonard J. Thornburg and Walter C. Olsen.

SEC sought to enjoin all defendants from violating Section 17(a) of the Securities Act of 1933, 15 U.S.C.A. § 77 q(a),[1] to enjoin Kellco from violating Section 7(a) of the Investment Company Act of 1940, 15 U.S.C.A. § 80a—7(a),[2] and for the appointment of a trustee and receiver for the assets of both Kellco and Midco pursuant to Section 42(e) of

1. "§ 77q. Fraudulent interstate transactions

"(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

"(1) to employ any device, scheme, or artifice to defraud, or

"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

2. "§ 80a—7. Transactions by unregistered investment companies

"(a) No investment company organized or otherwise created under the laws of the United States or of a State and having a board of directors, unless registered under section 80a—8 of this title, shall directly or indirectly—

"(1) offer for sale, sell, or deliver after sale, by the use of the mails or any means or instrumentality of interstate commerce, any security or any interest in a security, whether the issuer of such security is such investment company or another person; or offer for sale, sell, or deliver after sale any such security or interest, having reason to believe that such security or interest will be made the subject of a public offering by use of the mails or any means or instrumentality of interstate commerce;

"(2) purchase, redeem, retire, or otherwise acquire or attempt to acquire, by use of the mails or any means or instrumentality of interstate commerce, any security or any interest in a security, whether the issuer of such security is such investment company or another person;

"(3) control any investment company which does any of the acts enumerated in paragraphs (1) and (2) of this subsection;

"(4) engage in any business in interstate commerce; or

"(5) control any company which is engaged in any business in interstate commerce.

"The provisions of this subsection shall not apply to transactions of an investment company which are merely incidental to its dissolution."

the Investment Company Act of 1940, 15 U.S.C.A. § 80a—41(e).[3]

The district court entered an order granting a preliminary injunction against all defendants, except Olsen and Thornburg, appointing a trustee and receiver for Kellco, and taking under advisement the appointment of a trustee and receiver for Midco. From this order defendants, except Olsen and Thornburg, appealed.

Errors relied on for reversal concern the sufficiency of the evidence to support some of the findings, the lack of equitable or statutory grounds to support the appointment of the trustee and receiver for Kellco, the impropriety of some of the powers and duties conferred on the trustee and receiver, the lack of equitable or statutory authority to support the preliminary injunction and the breadth of such injunction.

The following facts seem well established by the record in this case.

Midco was incorporated in the State of Indiana in April, 1959, under the name Hoosier Securities Exchange, Inc. by Bullock, who became its president, and other persons. In July, 1959, Midco purchased all stock of Kellco (then Keller Securities Corporation), and Bullock became its president. In August, 1959, Bess became executive vice president of Kellco. Since that time there has been substantial identity between Midco and Kellco. Their meetings have often been held jointly and their business affairs closely intertwined.

Midco has been registered with the State of Indiana as a securities dealer continuously since 1959. However, from August, 1959 through October, 1961, Midco did not directly engage in the securities business but operated through its wholly owned subsidiary, Kellco.

In September, 1961, Bullock and Bess visited the Chicago Regional Office of SEC and inquired whether a corporation could sell monthly payment certificates in a common pool of securities solely to persons in Indiana without registering as a mutual fund. They were advised that what they proposed would constitute a "mutual fund" requiring registration with SEC.

Contrary to the advice of SEC, in October, 1961, Bullock and Bess commenced a program substantially the same as that which they had discussed with SEC in September. Midco resumed operations as a securities dealer. Kellco ceased being a securities dealer and became a diversified investment company.

Kellco reclassified its authorized capital stock from 1000 shares of $5.00 par value into 100,000 shares of no par value. Of the reclassified stock, 20,000 shares were issued to Midco in exchange for the

3. "§ 80a—41. Enforcement of subchapter

\* \* \* \* \* \* \*

"(e) Whenever it shall appear to the Commission that any person has engaged or is about to engage in any act or practice constituting a violation of any provision of this subchapter, or of any rule, regulation, or order hereunder, it may in its discretion bring an action in the proper district court of the United States, or the proper United States court of any Territory or other place subject to the jurisdiction of the United States, to enjoin such acts or practices and to enforce compliance with this subchapter or any rule, regulation, or order hereunder. Upon a showing that such person has engaged or is about to engage in any such act or practice, a permanent or temporary injunction or decree or restraining order shall be granted without bond. In any proceeding under this subsection to enforce compliance with section 80a—7 of this title, the court as a court of equity may, to the extent it deems necessary or appropriate, take exclusive jurisdiction and possession of the investment company or companies involved and the books, records, and assets thereof, wherever located; and the court shall have jurisdiction to appoint a trustee, who with the approval of the court shall have power to dispose of any or all of such assets, subject to such terms and conditions as the court may prescribe. The Commission may transmit such evidence as may be available concerning any violation of the provisions of this subchapter or of any rule, regulation, or order thereunder, to the Attorney General, who, in his discretion, may institute the appropriate criminal proceedings under this subchapter."

Kellco stock owned by it and having a net worth of less than $30,000. 16,000 shares were reserved for sale to the officers and directors of Kellco and Midco, at $1.00 per share, including 3,000 shares each for Bullock and Bess. 4,000 shares were set aside as prizes for salesmen.

The remaining 60,000 shares were registered with the Indiana Securities Commission for sale to the public at $10.00 per share. These shares were purchased by Midco, the purchase price being paid by a non-interest bearing note executed by Midco to Kellco in the amount of $510,000, or $8.50 per share. A report was filed with the Indiana Securities Commission stating that the stock had been "fully distributed."

Midco then resold approximately 30,000 shares of the Kellco stock to the public at prices ranging from $10.00 to $14.00 per share. Many of these sales were in effect barter transactions. Midco would purchase from the buyer of the Kellco stock, stock owned by such buyer in other corporations.

The Kellco stock was sold without using the prospectus filed with the Indiana Securities Commission. This prospectus would have disclosed, *inter alia*, that Midco was receiving a 15% commission on the sale of the stock. It would have permitted investors to ascertain from the financial statements included therein the dilution of the equity of the public stockholders through the allocation of stock to the officers and directors at a fraction of its selling price to the public.

On September 7, 1962, SEC informed defendants that they were suspected of being in violation of the Investment Company Act of 1940. On September 13, 1962, SEC began an examination of the books and records of Midco and Kellco. This examination disclosed that the last sale of stock by Midco to the public was on August 14, 1962. The examination was completed on October 5, 1962, and no further examination was made.

Defendants rescinded several sales of Kellco stock at the request of purchasers.

However, in at least one instance, the rescission was not accomplished until after repeated demands by the purchaser who finally turned the matter over to an attorney.

On November 30, 1962, SEC filed its complaint against defendants in the district court.

On December 7, 1962, Kellco and Midco each held meetings of their respective boards of directors and adopted resolutions authorizing the corporate officers to do acts and things necessary to carry out a program of dissolution of the business of Kellco.

The district court found as a fact "[t]hat from on and before November 1, 1961, to the date hereof [December 20, 1962] the defendants, * * * in the offer and sale of securities by the use of the mails, have been and * * * are now, * * * employing a device, scheme and artifice to defraud intended purchasers and holders of securities issued and to be issued by Kellco, and sold and to be sold by Midco on behalf of Kellco and Midco. * * * *"

In support of this finding, the court found, *inter alia*, that Bullock and Bess published in newspapers a consolidated balance sheet for Midco and Kellco which falsely overstated assets and retained earnings and concealed actual operating losses, concealed a deficit net retained earnings figure and a deficit earned surplus. Bullock and Bess incorporated the same false financial statement in a brochure used in selling Kellco stock. This brochure reported that Midco paid a dividend in 1961, without mentioning that the dividend was at least in part a return of capital.

The court further found that in selling Kellco stock, Bullock and Bess concealed from the purchasers the facts that: (1) Kellco had not received cash from the sale of 60,000 shares of its stock represented as having been sold and distributed at a public offering price of $10.00 per share but instead had received a non-interest bearing note of Midco; (2) that officers and directors of Midco and Kellco had re-

ceived the same class of stock at $1.00 per share; (3) that Midco was receiving an underwriter's commission of at least $1.50 on every share sold; (4) that the Kellco stock was being sold at artificial and arbitrarily predetermined escalating prices set by Bullock and Bess; and (5) that Midco was taking other securities in trade for Kellco stock and in so doing Midco was paying prices above the actual market for those securities and passing them on to Kellco at the inflated price. This further diluted the interest of the stockholders in Kellco.

The court found "[t]hat from on or about March 20, 1962, to the date hereof, * * * " Bullock and Bess mismanaged Kellco. The court further found that Kellco had never registered with SEC pursuant to Section 8(a) of the Investment Company Act, 15 U.S.C.A. § 80a—8(a).[4]

The district court entered conclusions of law "[t]hat since on or before February 1, 1962, to the date hereof, Kellco has been and is an investment company within the meaning of Section 3 of the Investment Company Act of 1940 (15 U.S.C. § 80[a]—3)" and "[t]hat the defendants, * * * have engaged, are engaged and * * * are about to engage in acts and practices which constitute and will constitute violations of Sections 17 (a) (1), 17(a) (2) and 17(a) (3) of the Securities Act of 1933, as amended * * *, and Sections 7(a) (1) and 7(a) (2) of the Investment Company Act of 1940, as amended * * *."

The court entered a preliminary injunction pursuant to Section 20(b) of the Securities Act of 1933, 15 U.S.C.A. § 77t(b)[5] and Section 42(e) of the Investment Company Act of 1940.

The court appointed a trustee and receiver of all records, claims and assets. of Kellco, pending a final determination of the matter. The court acted under authority of Section 42(e) of the Investment Company Act of 1940, and also on the basis of the inherent powers of the court as a court of equity.

Appellants' principal grounds urged for reversal are now set out in some detail.

They contend that the findings of fact that the fraudulent scheme, mismanagement and activity as an investment company continued to the date of the findings, are clearly erroneous. They concede that they engaged in these acts. However, they contend that these acts did not continue until the date the district court entered its findings.

They assert that the appointment of a trustee and receiver for Kellco cannot be sustained. They contend that under Section 42(e) of the Investment Company Act of 1940, a trustee can be appointed only to enforce compliance with Section 7 of such Act. They contend that they are engaged in a course of dissolution of Kellco and are not in violation of Section 7. They argue that the appointment cannot be sustained on the basis of the equity powers of the court. They state that a court of equity can appoint a

4. "§ 80a—8. Registration of investment companies

"(a) Any investment company organized or otherwise created under the laws of the United States or of a State may register for the purposes of this subchapter by filing with the Commission a notification of registration, in such form as the Commission shall by rules and regulations prescribe as necessary or appropriate in the public interest or for the protection of investors. An investment company shall be deemed to be registered upon receipt by the Commission of such notification of registration."

5. "§ 77t. Injunctions and prosecution of offenses

*    *    *    *    *    *    *

"(b) Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this subchapter, or of any rule or regulation prescribed under authority thereof, it may in its discretion, bring an action in any district court of the United States or United States court of any Territory, to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond. * * *"

trustee and receiver only when a corporation is insolvent or there is a continuing mismanagement. In the alternative, they charge that the powers and duties conferred on the trustee and receiver are improper. They state that a receiver should be a conservator to maintain the status quo of the corporate assets and therefore it was error for the court to give the receiver the power to operate the business of Kellco, enforce claims of Kellco against Midco and apply for a receivership for Midco.

Appellants also contend that the entry of the preliminary injunction was error. They assert that the evidence failed to show continuing violations of Section 17(a) of the Securities Act of 1933 and Section 7(a) of the Investment Company Act of 1940. Also, they state that they were attempting in good faith to make restitution to the purchasers of stock of Kellco and to effect the dissolution of Kellco. In the alternative, they contend that the injunction is too broad in scope. They say that the injunction is framed to enjoin all possible breaches of Section 17(a) of the Securities Act of 1933 and Section 7(a) of the Investment Company Act of 1940 and thus is in violation of Rule 65(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A.[6]

Appellants do not challenge that part of the findings of the trial court, Nos. 6, 7, 8 and 9, in which the court found that they employed a scheme to defraud the investing public. It is not denied that appellants continued their illegal activities until some time during the latter part of August, 1962. However, they charge that Findings Nos. 6, 8 and 9 are clearly erroneous to the extent that the court found that such illegal activities, set out in Finding No. 7, continued until the findings were filed by the court.

The short answer to this is that the part of such findings complained of were not necessary to warrant the issuance of the statutory injunction entered in this case. Appellants' fraudulent past conduct as properly found in this case gives rise to the inference that there was a reasonable likelihood of future violations. And, this is true even though appellants had ceased their illegal activities prior to the commencement of the action. Securities and Exchange Com'n v. Universal Serv. Ass'n, 7 Cir., 106 F.2d 232 (1939), cert. denied, 308 U.S. 622, 60 S.Ct. 378, 84 L.Ed. 519; Securities and Exchange Commission v. Culpepper, 2 Cir., 270 F.2d 241 (1959); Otis & Co. v. Securities and Exchange Commission, 6 Cir., 106 F.2d 579 (1939). To the same effect, see Securities and Exchange Commission v. Boren, 2 Cir., 283 F.2d 312 (1960); Securities and Exchange Commission v. Bennett & Company, D.N.J., 207 F.Supp. 919 (1962).

We hold that the district court did not abuse its discretion in granting a preliminary injunction in this case.

Further, we are convinced that the district court had the broad power and wide discretion to frame the scope of its preliminary injunction in terms of the statute and in doing so did not abuse its discretion. The Commission made a prima facie showing of the need for such relief. McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949); Hoving Corporation v. F. T. C., 2 Cir., 290 F.2d 803 (1961); Hillsborough Invest. Corp. v. Securities & Exch. Com'n, 1 Cir., 276 F.2d 665 (1960).

The broad framework of the injunction in this case is particularly appropriate because of the public interest involved

6. Rule 65(d) is as follows:
 "(d) Form and Scope of Injunction or Restraining Order.
 "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

and the necessity of protecting the investing public from fraud and deceit.

██ Appellants challenge the correctness of other findings. We have examined these findings with care and have determined there is ample support in the record for them. This is particularly true with reference to the key finding that Kellco was illegally operating as an unregistered investment company. It was for the trial court to draw proper inferences, to evaluate testimony and determine matters of credibility. There was a strong prima facie showing of fraud and deceit throughout and the court was not bound to believe and credit the protestations of Bullock and Bess.

██ The district court was vested with inherent equitable power to appoint a trustee-receiver under the facts of this case. The prima facie showing of fraud and mismanagement, absent insolvency, is enough to call into play the equitable powers of the court. It is hardly conceivable that the trial court should have permitted those who were enjoined from fraudulent misconduct to continue in control of Kellco's affairs for the benefit of those shown to have been defrauded. In such cases the appointment of a trustee-receiver becomes a necessary implementation of injunctive relief. Los Angeles Tr. D. & M. Exch. v. Securities & Exch. Com'n, 9 Cir., 285 F.2d 162, 181–182 (1961), cert. denied, 366 U.S. 919, 81 S.Ct. 1095, 6 L.Ed.2d 241; Aldred Inv. Trust v. Securities and Exchange Com'n, 1 Cir., 151 F.2d 254, 260–261 (1945), cert. denied, 326 U.S. 795, 66 S.Ct. 486, 90 L.Ed. 483; Bailey v. Proctor, 1 Cir., 160 F.2d 78 (1947), cert. denied, 331 U.S. 834, 67 S.Ct. 1515, 91 L.Ed. 1847.

██ Further, in reading Section 42 (e) of the Act with Section 7(a) in light of the purpose of the legislation, it is clear to us that Congress was evolving a statutory plan for the protection of the investing public. It is peculiarly applicable to the case at bar. Kellco was found to have been an investment company, operating unregistered and in violation of Section 7(a) of the Act, pursuant to a fraudulent scheme in violation of the fiduciary relationship running from the operators to their unsuspecting stockholders. It is readily apparent that the district court was vested with statutory power in addition to its inherent equitable power to appoint the trustee-receiver for Kellco.

Having determined that the district court properly invoked its equitable jurisdiction, the court acted within its powers in granting to the trustee-receiver authority necessary to insure full and complete relief in light of the statutory purpose. The powers given the fiduciary in this case were appropriate for the protection of the stockholders. Mitchell v. Robert DeMario Jewelry, 361 U.S. 288, 291–292, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960); Porter v. Warner Co., 328 U.S. 395, 398, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946).

We have considered other questions argued by appellants and cases cited by them on all issues presented. We are not persuaded that the district court erred in its findings, conclusions and judgment order.

The judgment of the district court appealed from is in all respects affirmed.

Affirmed.