Deborah TANZER, Plaintiff,

v.

Robert H. HUFFINES, Jr., et al.,
Defendants.

Civ. A. No. 3166.

United States District Court
D. Delaware.

June 27, 1968.

Irving Morris and Joseph A. Rosenthal, of Cohen, Morris & Rosenthal, Wilmington, Del., and Benedict Wolf and Howard L. Jacobs, of Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiff.

Ernest S. Wilson, Jr., of Wilson & Lynam, Wilmington, Del., for defendants B.S.F. and Edward Krock.

OPINION

LAYTON, District Judge.

Plaintiff, a stockholder of B.S.F. Company, a diversified management invest-

ment company,[1] filed this derivative suit against Defiance Industries, Inc., (Defiance), B.S.F. Company (B.S.F.), and certain individual defendants, Robert H. Huffines, Jr., Victor Muscat and Edward Krock. The complaint charges that the individual defendants by virtue of their control of Defiance, which in turn controlled B.S.F., were able to infiltrate into and make themselves officers and directors of certain portfolio companies of B.S.F. As a result, it is alleged that the individual defendants, without adequate consideration, improperly drew salaries, bonuses and obtained stock options, etc., from these portfolio companies. Further, the complaint charges that the transactions described not only violated the Securities and Exchange Act of 1934 and the Investment Company Act of 1940, but also that B.S.F. suffered substantial damage. The complaint goes on to allege that certain attempts to wrest control of the portfolio companies from existing management were not only unsuccessful but resulted in large and improper expenditures by way of legal fees, proxy fights, etc., and that, moreover, B.S.F. sustained heavy losses as a result of compelled purchases of stock negotiated by the individual defendants without regard for the interest of B.S.F. or the B.S.F. stockholders.

The prayers of the complaint are for the appointment of a receiver of the assets of B.S.F., an accounting to B.S.F., an order requiring B.S.F. to divest itself of the stock of certain companies owned by it and the cancellation of a management agreement between B.S.F. and Defiance.

During the course of pre-trial discovery last summer, plaintiff moved for the appointment of a receiver pending final disposition of the derivative suit. The motion was narrow in scope, based solely on the failure of defendant Muscat to respond to some 775 questions propounded by plaintiff's attorney during several deposition sessions. In an unreported opinion, this Court denied the motion, stating, "On the present state of the record, there appears to be no compelling need for the appointment of a receiver on the grounds alleged."

On February 5, 1968, plaintiff renewed her motion for the appointment of a temporary receiver. This motion, unlike that of August 1967, is broadly based. The motion was twice argued to the Court, and briefs, supplemental memoranda, affidavits and other exhibits have been submitted. The new material which has most affected the Court's view of the situation at B.S.F. is (1) the decision of Judge Mansfield in Norte and Company v. Huffines et al., 288 F.Supp. 855 (S.D.N.Y., May 15, 1968), (2) the failure of B.S.F. to comply with requirements of 15 U.S.C. § 80a–29(a), (3) omissions in material submitted to the Court by the defendants and (4) misleading information in the 1967 Annual Report to Stockholders of B.S.F. Company.

It is well settled that this Court has the power to appoint a receiver in a proper case.[2] However, the law is also well established that the remedy is a harsh one, one to which a Court should not resort in any but the most extreme circumstances. The language of the opinions appointing receivers speaks in terms of gross fraud and mismanagement, creating a situation of " 'imperious necessity, when the right of the complainant, on the showing made by him, is undoubted * * *.' " Maxwell v. Enterprise Wallpaper Mfg. Co., 131 F.2d 400, 403 (C.A.3, 1942).

In his opinion in Norte and Company v. Huffines, supra, Judge Mansfield concluded that:

"Plaintiff has established a clear case of gross and deliberate fraud on

---

1. 15 U.S.C. § 80a–4, § 80a–5.

2. In its unreported opinion of August 1967, this Court noted that a part of the equity jurisdiction of a United States District Court is the power to appoint a receiver on the application of a stockholder. Burnrite Coal Company v. Riggs, 274 U.S. 208, 212, 47 S.Ct. 578, 71 L.Ed. 1002 (1927), and see Maxwell v. Enterprise v. Wallpaper Mfg. Co., 131 F.2d 400, 402 (C.A.3, 1942).

the part of defendants Huffines and Muscat, knowingly participated in by Krock, in breach of their fiduciary duties to Defiance's stockholders and with the purpose and effect of profiting at the expense of its stockholders. It is difficult to conceive of more flagrant and callous breaches of trust on the part of corporate fiduciaries than those found here."

In commenting on the significance of Judge Mansfield's adjudication, the sole response by counsel for the defendants seems to be that this conduct occurred in 1962 and did not occur in direct connection with B.S.F.[3]

▆ To the contrary, in cases where the Securities and Exchange Commission has sought injunctions against future violations of the securities laws, courts have found that illegal past conduct gives rise to the inference that there is a reasonable likelihood of future violations. S. E. C. v. Keller Corporation, 323 F.2d 397 (C.A.7, 1963). The analogy to this case is particularly strong, where the suit brought by this private plaintiff is against an investment company, which the Congress has determined to be "affected with a national public interest" and the improper management of which adversely affects the "national public interest and the interest of investors." 15 U.S.C. § 80a–1.

Rather than establishing that the reprehensible conduct of 1962 will not be repeated in 1968, the most recent activities of the defendants indicate otherwise. On June 20, 1968, this Court was advised by defendants' attorney[4] that defendant B.S.F. was proposing a stockholders meeting for the election of a new slate of directors. The obvious purpose of advising the Court about the proposed forthcoming election was to encourage the Court to believe that hereafter B.S.F. would be subject to relatively independent direction and control. With much emphasis, the letter from counsel states that defendant Muscat will not be one of the directors, and that of the five directors proposed, only two could be regarded as having "a fixed relationship" to any of the triumvirate, Muscat, Huffines and Krock. The letter includes biographical sketches of the proposed directors to demonstrate the independence of at least three of the proposed slate. The biographical sketches are hardly complete. For example, proposed director Edward J. Spellman is listed as Executive Vice President of Modern Globe Sales, Inc.; a director of Fairlee Textile Company; Vice President of Pohatcong Hosiery Mills, and other textile companies. Significantly, the letter fails to point out that Mr. Spellman has also been a director of Fifth Avenue Coach, Mercantile National Bank of Chicago, Telepro Industries, Westchester Street Transportation Company, Inc., as well as President of the Roy M. Cohn Foundation. Fifth, Mercantile, Telepro and Westchester are corporations with which Muscat, Krock, and Huffines have had substantial connection for many years. Roy M. Cohn is a codefendant of Muscat in the Fifth Avenue case now pending before Judge McLean, as well as a partner in the law firm of Saxe, Bacon and O'Shea, which represented Victor Muscat and Robert Huffines in the Norte case. Albert Campbell, also a proposed director, is listed as having been a former City Court Judge of New Rochelle, N. Y., and a former Chairman of the Zoning Board of Appeals of the City of New Rochelle. The letter fails to include in Mr. Campbell's biographical sketch the fact that he was counsel for defendant Muscat, at least for a short time, in the Fifth Avenue Coach proceedings before Judge McLean.

▆▆ In addition to all this, the record in this Court also shows that the

---

3. The connection with B.S.F., however, was not remote as Defiance Industries was a controlling stockholder of B.S.F.

4. The Court's comments regarding the information submitted by local counsel about B.S.F.'s proposed election of directors are not intended to imply in any way that defendants' counsel was knowingly attempting to mislead the Court.

B.S.F. Company has failed to comply with certain reporting requirements of the Investment Company Act of 1940 in not filing with the Securities and Exchange Commission an Annual Report for the year 1967. 15 U.S.C. § 80a–29(a). This failure of B.S.F. can hardly be regarded as a mere technical oversight. The Annual Report, Form N–1R,[5] includes such essential information as an analysis of per share income and capital charges, a statement of the persons owning equity security of the company, a statement of the remuneration paid to the directors, the officers and members of the advisory board of the company, and a statement identifying the directors and officers of the company. The significance of the failure to file this Annual Report with the Securities and Exchange Commission is especially marked in this case where the Annual Report to Stockholders makes no mention of the directors or officers of the corporation and where by defense counsel's own admission to the Court, B.S.F. has been operating with only three of the authorized number of directors, Muscat and two other attorneys closely associated with Muscat, Krock and Huffines.

The omission of the names of directors and officers from B.S.F.'s annual report is relatively innocuous compared with the following matters. Whether intentional or not, the report is nothing short of misleading. On the second page of the report in the statement of net assets at value, the figures for the years 1967 and 1966 are reversed. Thus, a reading of the report reflects an increase in net asset value from $6.08 in 1966 to $6.78 in 1967. In point of fact, however, the net value decreased from 1966 to 1967 by some 70¢ per share.

Secondly, and most significantly, improper treatment is given to the gain on the sale of investments in the statement of income and expenses. In the Securities and Exchange Commission rules for financial statements for management investment companies, 17 C.F.R., Chapter II, § 210.6, investment companies are directed in §§ 210.6–04 and 210.6–05 to report net realized gain on investments in a statement separate from that which reports income and expenses. Had B.S.F. followed this procedure in its 1967 report to stockholders, the income statement for 1967 would have shown a net loss of $300,000 rather than the net gain of $317,000 which was reported. Equally serious, if not more so, is the fact that in 1966, when there was a net realized loss on the sale of investments, totaling $1,473,622, the loss was omitted from the income statement and reported separately. Of course, no notation of any kind accompanied this particularly significant change in accounting procedure.

Thirdly, in the notes attached to the report, B.S.F.'s obligation to the Dallas Transit Trust No. 1 is discussed but there is no indication that B.S.F., at cost less reserve, had pledged $1,941,729 of its portfolio securities to meet its obligation to Dallas. The significance of the amount is heightened even more when it is noted that B.S.F.'s investments, at cost less reserve, as of December 31, 1967, were but $4,177,054.[6]

In addition to the conduct detailed above, the defendants before this Court have indicated an almost flagrant disregard for the affairs of the B.S.F. Company. When defendant Muscat was deposed in the Spring and Summer of 1967, he refused to give responsive answers to over 700 questions propounded by plaintiff's counsel regarding the management of B.S.F. and its portfolio companies. When Mr. Krock's deposition was scheduled in the Fall of 1967, he appeared only after this Court was called upon to take the drastic step of threatening him with default if he continued in his refusal to appear.

5. 17 C.F.R. Chapter II § 274.101.

6. At value, the stock pledged in support of the Dallas obligation was $2,277,996 as of December 31, 1967, as against investments at value of $6,003,470.

The record now presented to the Court is markedly different from that before the Court in August 1967. It now appears affirmatively that the interest of the stockholders of B.S.F. Company is not only unrepresented but, in fact, is imperiled by present management's apparent disregard for its fiduciary responsibilities.

The Court notes, also, that since 1962, when these defendants assumed control of B.S.F., the market value of its common shares has dropped from approximately $16 to $4 per share. Further, a number of the transactions between the individual defendants and B.S.F. from 1962 to the present are suspect, and the intervention of a receiver to safeguard the investment of the B.S.F. stockholders, pending the outcome of this litigation, is imperative.

Accordingly, the motion for the appointment of a receiver pendente lite is granted.

Submit Order.