**Deborah TANZER**

v.

**Robert H. HUFFINES, Jr., Edward Krock, Victor Muscat, Defiance Industries, Inc., and B. S. F. Company.**

**B. S. F. Company, Appellant.**

**No. 17505.**

United States Court of Appeals
Third Circuit.

Argued Feb. 17, 1969.

Decided March 18, 1969.

Bruce M. Stargatt, Young, Conaway, Stargatt & Taylor, H. Albert Young, Jack B. Jacobs, Wilmington, Del., for appellant.

Paul L. Ross, Wolf, Popper, Ross, Wolf & Jones, New York City (Cohen, Morris & Rosenthal, Wilmington, Del., Howard L. Jacobs, New York City, Irving Morris, Wilmington, Del., on the brief), for appellee.

Theodore Sonde, Securities & Exchange Commission, Washington, D. C. (Philip A. Loomis, Jr., General Counsel, Walter P. North, Associate General Counsel, Brian M. Eisenberg, Atty., Securities and Exchange Commission, Washington, D. C., on the brief), amicus curiae.

Before VAN DUSEN, ALDISERT and STAHL, Circuit Judges.

## OPINION OF THE COURT

**PER CURIAM:**

This is an appeal from the appointment of a receiver *pendente lite* in a stockholder's derivative action wherein the plaintiff alleges *inter alia* that the individual defendants, Robert Huffines, Victor Muscat and Edward Krock, by virtue of their control of Defiance Industries, Inc., which in turn controlled B.S.F. Company, infiltrated and were able to make themselves officers and directors of certain of B.S.F.'s portfolio companies; that the individual defendants improperly withdrew salaries, obtained bonuses and stock options from those portfolio companies; and that they caused B.S.F. (1) to suffer substantial damage in attempts to gain control of those portfolio companies by requiring large and improper expenditures in legal fees and proxy fights, and (2) to sustain heavy losses as a result of stock purchases and sales they compelled in their own interests without regard to the interests of B.S.F. or its shareholders.

 It is clear that a District Court may appoint a receiver in a proper case. Burnrite Coal Briquette Co. v. Riggs, 274 U.S. 208, 212, 47 S.Ct. 578, 71 L.Ed. 1002 (1927). A receiver may be appointed to avert further loss of assets through waste and mismanagement. Savage v. United States District Court, etc., 144 F.2d 575. (9th Cir. 1944); Coskery v. Roberts & Mander Corporation, 97 F.Supp. 14 (E.D.Pa.), appeal dismissed, 189 F.2d 234 (3rd Cir. 1951). After a careful examination of the record, we have concluded that there was no abuse of discretion by the District Court in appointing the receiver *pendente lite* for B.S.F.

The District Court primarily relied on the following factors as justifying appointment of a receiver *pendente lite* [Tanzer v. Huffines, 287 F.Supp. 273, 274 (D.Del.1968)]:

(1) The decision of Judge Mansfield in Norte & Company v. Huffines, 288 F.Supp. 855 (S.D.N.Y.1968), where the court pointed out that "Plaintiff has established a clear case of gross and deliberate fraud on the part of defendants Huffines and Muscat, knowingly participated in by Krock * * *";

(2) B.S.F.'s non-compliance with the requirements of 15 U.S.C. § 80a–29 by failing to file the Annual Report, Form N–1R, with the Securities and Exchange Commission;

(3) omissions from material which the defendants submitted to the court; and

(4) misleading information in the 1967 Annual Report to Stockholders of B.S.F.

In *Norte, supra,* another District Court found that the individual defendants had violated the federal securities law in the operation of Defiance. The record is also clear that B.S.F. did not file Form N–1R as required. This failure is significant because that form elicits essential information such as an analysis of per share income and capital charges, a statement of remuneration paid to officers and directors, and a statement identifying those officers and directors.[1] Added significance must be attached to

---

1. The complaint's allegations of violations of the Securities Exchange Act of 1934 and the Investment Company Act (6A), as supported by the foregoing, together with the finding of gross and deliberate fraud by these individual defendants in *Norte, supra,* justified the District Court's noting that " * * * in cases where the Securities and Exchange Commission has sought injunctions against future violations of the securities laws, courts have found that illegal past conduct gives rise to the inference that there is a reasonable likelihood of future violations. S. E. C. v. Keller Corporation, 323 F.2d 397 (C.A. 7, 1963). The analogy to this case is particularly strong, where the suit brought by this private plaintiff is against an investment company, which the Congress has determined to be 'affected with a national public interest' and the improper management of which adversely affects the 'national public interest and the interest of investors.' 15 U.S.C. § 80a–1." (Page 275 of 287 F.Supp.)

the failure to mention the names of the officers and directors in the Annual Report to Stockholders, since the record shows that B.S.F. had been operating with only three of the five authorized directors. Not only did the report omit the directors' names, but also it was actively misleading in that (1) the net asset figures for 1966 and 1967 were reversed;[2] (2) improper treatment was given to the gain on the sale of investments;[3] and (3) in the notes attached to the Report, the obligation to Dallas Transit Trust No. 1 is discussed without indication that B.S.F., at cost less reserve, had pledged $1,941,729. of its portfolio securities to meet its obligation to Dallas.[4]

The last of the four bases upon which Judge Layton principally relies is a letter sent him by defendants' counsel which purportedly included biographical sketches of proposed directors of B.S.F. That letter was quite misleading. It stated "Of the five Directors proposed, two (Scholz and Keating) must be regarded as having a fixed relation to the present management." That statement was literally and figuratively a half truth. In fact, four of the proposed directors had a fixed relation to the existing management.[5]

Judge Layton also commented on Muscat's failure to responsively answer over 700 questions on deposition and Krock's failure to appear for deposition until threatened with a default judgment. See 287 F.Supp. at 276. The court also noted the decline in the value of a share

2. As a result, the Report reflected an increase in net asset value from $6.08 in 1966 to $6.78 in 1967, when the net asset value had actually decreased 70 cents per share from 1966 to 1967.

3. Had B. S. F. followed the direction of 17 C.F.R. Chap. II, § 210.6, and reported net realized gain on investments in a statement separate from that which reports income and expenses, it would have shown a net loss of $300,000., rather than the net gain of $317,000. which was reported. Also, in 1966, when there was a net realized loss on the sale of investments totalling $1,473,622., the loss was omitted from the income statement and reported separately. No notation accompanied this highly significant change in the accounting procedure.

4. In a brief filed by the Securities and Exchange Commission as *amicus curiae*, requesting that the District Court order appointing the receiver *pendente lite* be affirmed, it is pointed out that (p. 6):
" * * * although the notes to the financial statements in the Annual Report for 1967 indicate that certain assets pledged to Dallas Transit Trust No. 1 had been foreclosed upon and were subject to sale, no indication is given concerning what assets were so threatened or what their value, either at cost or market, was; even though they constituted a significant portion of BSF's total investments. The value of the assets pledged on an indebtedness of $985,000 was $2,277,996 [$1,-941,729. plus reserve of $336,267.], compared to total investments valued at $6,003,470 as of December 31, 1967.[7]
"7. The seriousness with which the violations of the securities laws relating to reporting of information mentioned in Judge Layton's opinion are viewed by the Commission is of public record. In Securities and Exchange Act of 1934 Release No. 8358, noted at 33 Fed.Reg. 10597 (July 19, 1968), the Commission suspended trading of the common stock and debentures of BSF 'based upon the need for clarification of information contained in the company's Annual Report to Stockholders for Fiscal Year 1967 and upon the failure of the company to file with the Commission an Annual Report for 1967, (Form N–1R) * * * and a Quarterly Report (Form N–1Q). * * *' This action by the Commission followed trading suspensions by the American Stock Exchange on July 3, 1968 and the Philadelphia Baltimore Washington Stock Exchange on July 8, 1968 recognizing the importance of financial statements that are both correct and current to orderly trading of securities."

5. Edward Spellman, one of the proposed directors, was also a director of Fifth Avenue, Mercantile, Telepro Industries, and Westchester Street Transportation, Inc., as well as President of the Roy M. Cohn Foundation (a charitable endeavor of Muscat's former attorney).
Albert Campbell, another prospective director, had represented Muscat in the past.

of B.S.F. from the time the defendants acquired control of that company.[6]

■ We agree that collectively, at least, these reasons listed by the District Court are sufficient to require our holding that there was no abuse of discretion in the appointment of a receiver *pendente lite.* By our independent examination of the record,[7] we find that the defendants' activities with relation to American Hardware Company, Republic Corporation, Mercantile National Bank of Chicago, Fifth Avenue Coach Lines, Gray Line Corporation, American Steel & Pump Corporation, and Wright Machine Corporation as a result of their control of B.S.F. lend additional support to the propriety of the appointment of a receiver.[8]

6. From 1962 to 1968, the market value of the shares dropped from $16 to $4 per share (287 F.Supp. at 277).

7. "Certainly an appellate court is entitled to examine the entire record before concluding whether the result reached below is correct or erroneous." Lum Wan v. Esperdy, 321 F.2d 123 (2nd Cir. 1963). See, also, Securities & Exchange Commission v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

8. American Hardware was B. S. F.'s major asset in 1962 when the defendants took control (80a, 264a). Defendants demanded majority representation on Hardware's Board of Directors (88a–89a, 263a–264a). That demand was refused (89a, 264a–265a), and Hardware's management contract with B. S. F. was cancelled (83a, 263a). Litigation was then instituted by B. S. F. (89a–90a) but a proxy fight was thwarted when B. S. F.'s application for access to Hardware's stockholder list was denied.

B. S. F. then sold its shares of American Hardware, which sale the S. E. C. ruled transformed B. S. F. into an investment company requiring registration and subjecting it to the restrictions, limitations and sanctions of the Investment Act (100a). This sale deprived B. S. F. of over $500,000. per year in dividends, as well as the management fees.

Thereafter, in July 1963, B. S. F. purchased 290,000 shares of Republic Corporation at $11.00 per share (289–90a). Defendants were elected to Republic's Board at a salary of $15,000. each per year, and were given stock options (124a, 292a, 299a, 308a). In late 1963, the defendants lost control of the majority of the Board of Directors and were ousted (129–30a, 314–16a). In 1964, Republic ceased paying a dividend (319a, 489a), but B. S. F. retained the stock until 1966, when it was sold for $9.00 a share, payable in non-interest bearing notes due over a five-year period (136a, 142a, 492a).

B. S. F. purchased stock at the Mercantile National Bank of Chicago (154a, 322a), and using this and the other assets of B. S. F., along with assets of Defiance, defendants gained control of Guaranty Bank & Trust Company, Gateway National Bank, and the University National Bank (all of Chicago). Defendants Krock and Muscat were made directors of Mercantile at a salary of $35,000. per year (167a), which was later reduced to $20,000. per year. In late 1966 and early 1967, defendants Muscat and Krock caused Fifth Avenue to make a tender offer for Mercantile shares by which Fifth Avenue acquired 26% of the Mercantile shares.

From August 1963 to February 1964, B. S. F. purchased stock in Gray Line Corporation and Fifth Avenue Coach Lines (342a), then in the process of condemnation proceedings (228a, 358a) for $30. per share (442a). Defendants were elected to Fifth Avenue's Board (364a) and Muscat became President and Chairman of the Board of Directors and the other two were elected officers (366a) with salaries of approximately $50,000. each per year (368a). The condemnation award when made caused the market value of the Fifth Avenue shares to fall to $10. per share (241a, 356a).

In 1964, B. S. F. purchased a large block of stock of American Steel & Pump Corporation (188a) and thereafter defendant Muscat was elected Chairman of Steel's Board of Directors (194a, 196a); Krock was made President and Treasurer (197a, 514a); and Huffines was elected Vice-President and Chairman of the Executive Committee (396a). Each entered an employment contract providing for salaries and bonuses (198a–99a, 401a) which in 1964 amounted to over $30,000. each and which amounted to over $50,000. for each during every year thereafter (404a, 514a).

Finally, in August 1964, B. S. F. purchased assets of Wright Machine Corporation (414a). The defendants caused Wright to enter a management contract with Defiance (217a), and became directors and officers of Wright and have received salaries and other benefits therefrom (215a, 414a).

For the foregoing reasons, the judgment of the District Court appointing a receiver *pendente lite* for B.S.F. will be affirmed.