Deborah TANZER, Plaintiff,

v.

Robert H. HUFFINES, Jr., et al.,
Defendants.

Civ. A. No. 3166.

United States District Court,
D. Delaware.

Aug. 24, 1970.

See also D.C., 314 F.Supp. 189.

Irving Morris and Joseph A. Rosenthal of Cohen, Morris & Rosenthal, Wilmington, Del., and Paul L. Ross of Wolf, Pepper, Ross, Wolf & Jones, New York City, of counsel, for plaintiff.

Howard M. Handelman of Bayard, Brill & Handelman, Wilmington, Del., and Murray I. Gurfein and Lowell D. Willinger, New York City, of counsel, for defendant Victor Muscat.

Henry M. Canby, E. N. Carpenter, II and Richard F. Ballotti of Richards, Layton & Finger, Wilmington, Del., and William R. Glendon and William J. O'Brien of Royall, Koegel & Wells, New York City, of counsel, for defendant Robert L. Huffines, Jr.

David A. Drexler of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and William J. Kenney of Maguire & Tucker, Washington, D. C., of counsel, for defendant Edward Krock.

William Poole and Michael D. Goldman of Potter, Anderson & Corroon, Wilmington, Del., for defendant B.S.F. Co.

## OPINION

LATCHUM, District Judge.

Plaintiff has moved for an order taxing the costs and expenses of the receivership *pendente lite* of the B.S.F. Company ("B.S.F.") against the three named individual defendants—Victor Muscat, Edward Krock and Robert H. Huffines, Jr.[1]

Plaintiff, a stockholder of B.S.F., a diversified management investment company,[2] brought this derivative action against Defiance Industries, Inc. ("Defiance"), B.S.F. and the individual defendants. The complaint charges that the individual defendants by virtue of their control of Defiance, which in turn controlled B.S.F., infiltrated and were able to make themselves officers and directors of certain of B.S.F.'s portfolio companies; that the individual defendants improperly withdrew salaries, obtained bonuses and stock options from those portfolio companies; and that they caused B.S.F. (a) to suffer substantial damage in attempts to gain control of the portfolio companies by requiring large and improper expenditures in legal fees and proxy fights and (b) to sustain heavy losses as a result of stock purchases and sales which they compelled in their own interests in disregard of the interest of B.S.F. and its shareholders. The merits of this action have not yet been tried or determined.

On July 7, 1967, plaintiff moved for the appointment of a receiver pending final disposition of the derivative action based principally upon the failure of defendant Muscat to respond to some 775 questions propounded to him during several pretrial deposition sessions. In an unreported opinion, this Court (Layton, J.) denied the application on August 18, 1967.

Plaintiff renewed her motion for the appointment of a temporary receiver on February 5, 1968 based on much broader grounds. On the new showing then made, Judge Layton found "that the interest of the stockholders of B.S.F. Company is not only unrepresented but, in fact, is imperiled by present management's apparent disregard for its fiduciary responsibilities * * *, that the number of transactions between the individual defendants and B.S.F. from 1962 to the present is suspect, and the intervention of a receiver to safeguard the investment of the B.S.F. stockholders, pending the outcome of the litigation, is imperative." Accordingly, in the exercise of sound discretion, a receiver *pendente lite* for B.S.F. was appointed on July 12, 1968.[3] 287 F.Supp. 273 (D. Del.1968), aff'd 408 F.2d 42 (C.A. 3, 1969). The receiver took complete control of the assets and management of B. S.F.

---

1. B.S.F. has filed a "statement of position" supporting plaintiff's present motion.

2. 15 U.S.C. §§ 80a–4, 80a–5.

3. William Prickett, a Wilmington attorney, was appointed receiver and plaintiff's present counsel were appointed attorneys for the receiver.

During the course of administering the receivership, the Court allowed expenses to the receiver and his counsel in the amount of $12,955.50 on August 8, 1969 and awarded interim fees in the amount of $255,300.00 to them on December 3, 1969. No objections were made by the plaintiff to the payment of these fees and expenses out of the receivership funds.

The receivership was a success. The receiver was able to straighten out the muddled affairs of B.S.F. and a change in control and management of B.S.F. was effected. As a result B.S.F. moved to terminate the receivership. Following a hearing the receivership was terminated by order of this Court on April 21, 1970. That order provided that the receiver was authorized to retain sufficient receivership funds to permit a final allowance of fees and expenses. On April 24, 1970, the Court entered a final order authorizing the payment of fees and expenses to the receiver and his counsel in the amount of $127,632.06.

On May 13, 1970 the plaintiff filed the present motion seeking to tax all the costs and expenses of the receivership, totaling $395,887.56, against the individual defendants on the theory that it was their acts and conduct which necessitated the receivership. The plaintiff urges the Court at this time to assess the costs and expenses against the individual defendants on the basis of the same record which moved Judge Layton to appoint the receiver in the first place.

The individual defendants strongly oppose the present motion for several reasons. First, the defendants contend that to tax the expenses in the guise of costs at the present time would be tantamount to assessing damages against them for the waste of corporate assets before trial of the very wrongs for which they are charged. Second, the defendants argue that the orders, authorizing the expenses to be paid from the funds of the receivership which is now closed, are *res judicata*. Third, the defendants assert that this Court lacks jurisdiction to reopen the receivership proceedings to review those orders. Fourth, the defendants maintain that they would be denied due process of law if the costs were taxed against them since the plaintiff did not notify them of her intention to seek the taxation of the costs until after the costs had been awarded from the receivership funds.

 The Court rejects the defendants' contention that it lacks jurisdiction to tax costs because the receivership proceedings have been terminated. While it is true that a Court loses jurisdiction over the receivership property once the receivership is terminated and no motions may be entertained in a receivership proceeding after its termination, Davis v. Duncan, 19 F. 477 (C.C.S. D.Miss.1884); Chicago Title & Trust Co. v. Fox Theaters Corp., 164 F.Supp. 665 (S.D.N.Y.1958), those principles are not applicable here. Plaintiff's motion to tax costs is not made in the receivership proceedings but is made in the underlying derivative action which has not yet been heard or determined. Moreover, this Court's order of April 21, 1970 which terminated the receivership specifically retained jurisdiction for the purpose of taking any action that might be appropriate to give effect to or enforce its order. The Court concludes that it has jurisdiction and power to tax receivership costs and expenses in this case even though the receiver *pendente lite* has been discharged.

 The defendants' contention that the three prior orders of this Court, which authorized the payment of costs and expenses from the *funds held by the receiver*, are *res judicata* on the issue of who should bear these costs must also be rejected. It is only after the entry of a final decree that the allowance or disallowance of costs becomes *res judicata*. See Munson v. Straits of Dover S.S. Co., 99 F. 787 (S.D.N.Y.1900); Fox v. Connecticut Fire Ins. Co., 380 F.2d 360 (C. A. 10, 1967). The case of Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1881), relied upon by the defendants, did not hold otherwise. *Greenough* simply held that the allowance of expenses

out of the receivership fund was final for the purposes of an interlocutory appeal. It did not hold that orders, taxing receivership costs before a final decree was entered, were final in the *res judicata* sense.

However, the Court finds it would be premature to grant plaintiff's motion at this stage of the litigation.

■■ Unquestionably, in equity proceedings, such as the present derivative action, the allowance and imposition of costs and expenses rests in the sound discretion of the Court, Newton v. Consolidated Gas Co., 265 U.S. 78, 83, 44 S.Ct. 481, 68 L.Ed. 909 (1924); Burnrite Coal Briquette Co. v. Riggs, 274 U.S. 208, 214–215, 47 S.Ct. 578, 71 L.Ed. 1002 (1927), to be assessed "in accordance with justice, unburdened by any fixed rule." Camp v. Canelacos, 76 U.S.App. D.C. 337, 131 F.2d 236, 237 (1942). Hence, governed by a sense of what is fair and just under the circumstances, this Court could tax costs prior to a final disposition of the litigation, Associated Almond Growers v. Wymond, 69 F.2d 912, 914 (C.A. 9, 1934), could determine which of the parties may be assessed, Kell v. Trenchard, 146 F. 245, 247 (C.A. 4, 1906), and could apportion the costs among the various parties. Kederick v. Heintzleman, 141 F.Supp. 633, 634 (D.Alaska 1956).

■ However, in order to properly exercise this broad discretion the Court needs before it a more extensive record than presently exists. Plaintiff's argument is unconvincing that the record which moved the Court to appoint a receiver *pendente lite* affords a sufficient basis for this Court on equitable principles to assess and apportion the receivership expenses at this time. Genuine issues of fact exists with respect to the question whether the individual defendants were involved to the same extent in the transactions which prompted the appointment of a receiver in the first place.

Further, it would be necessary to determine the proper allocation of any costs between B.S.F. and the individual defendants. When the receiver was appointed he assumed management control, displacing the officers and directors, which resulted in a saving of salaries and expenses. In addition, it is possible that some part of the receiver's legal fees might well have been incurred by B.S.F. in the absence of a receivership.

Because all of these factors should be considered and weighed before the Court makes its decision, an extensive hearing would be necessary. Since many of the issues which would be determined at such a hearing would be virtually the same as the issues which will be adjudicated at the trial of the merits of this case, the Court concludes that such a hearing would entail an unnecessary and burdensome duplication of effort on the part of the parties and the Court. To postpone the taxation and allocation of the receivership's costs and expenses until after trial would result in more effective administration of justice and would conserve judicial resources.

Consequently, this Court declines to exercise its discretion on the present record which the Court finds inadequate. Plaintiff's motion to tax the receivership costs and expenses against the individual defendants at this time will be denied.

An order will be entered in accordance with this opinion.