**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**The AMERICAN BOARD OF TRADE, INC., Arthur N. Economou, Phyllis H. Economou, and the American Board of Trade Service Corp., Defendants.**

**No. 83 Civ. 6213 (SWK).**

United States District Court,
S.D. New York.

Sept. 5, 1984.

Charles E.D. Padgett, New York City, for plaintiff S.E.C.

H. Spencer Kupferman, Brooklyn, N.Y., for American Bd. of Trade.

Jeffrey Tucker, New York City, for American Bd. of Trade and Mrs. Economou.

Arthur Economou pro se.

### MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff, the Securities and Exchange Commission ("SEC"), has applied to this Court for a preliminary injunction enjoining the defendants from violating the securities laws. Specifically, the SEC alleges that the defendants, the American Board of Trade, Inc. ("ABT"), the American Board of Trade Service Corp. ("Service"), Arthur N. Economou ("Economou"), and Phyllis H. Economou ("P. Economou"), violated sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a) and 77e(c); sections 17(a)(1), 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(1), 77q(a)(2) and 77q(a)(3); section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder; and section 7(a) of the Investment Company Act ("ICA"), 15 U.S.C. § 80a–7(a). For the reasons discussed below, the application is GRANTED.

### BACKGROUND

The defendants, respectively, are a self-described alternative securities exchange, the service company which provides administrative service to the exchange, and two of the officers and controlling persons of the corporate defendants. The defendants have marketed two investment programs which are the focus of this action. The first program, the ABT U.S. Treasury Bill Program ("Bill Program"), offered investors the opportunity to invest in a pool of United States Treasury Bills by purchasing Safekeeping Receipts. The second program, the ABT Service Corporation Commercial Paper Program ("Commercial Paper Program"), offered investors the opportunity to purchase, at a discount from face value, short-term commercial paper issued in small denominations by Service to finance its operations.

The complaint alleges that both of these programs represented public offerings of securities, that neither program was registered as required by the Securities Act, that ABT was acting as an unregistered Investment Company, and that the solicitations of purchases for both programs were materially false and misleading in violation of the applicable provisions of the Securities Act, the Exchange Act and the Investment Company Act. I will deal with each of these allegations in the above order, after first outlining the requirements for

issuance of a preliminary injunction on application of the SEC.

## DISCUSSION

■ For a preliminary injunction to issue in a securities case, the SEC must demonstrate (a) a *prima facie* case that a violation of the securities law has occurred, and (b) a strong likelihood that a violation will occur again in the future. *Securities and Exchange Commission v. Commonwealth Chemical Securities, Inc.*, 574 F.2d 90 (2d Cir.1978).

The SEC is empowered by section 20(b) of the Securities Act of 1933, 15 U.S.C. § 77t(b), Sections 21(d) and 21(e) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78u(d) and 78u(e), and section 42(e) of the Investment Company Act, 15 U.S.C. § 80a–41(e), in its discretion and "whenever it shall appear ... that any person is engaged or is about to engage in acts constituting a violation of any provision of (these) title(s) ..." to "bring an action in the proper district court of the United States ... to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond."

Before a preliminary injunction can issue, the SEC must demonstrate (a) a "strong *prima facie* case" of previous violations, and (b) "reasonable likelihood that the wrong will be repeated." *Securities and Exchange Commission v. Management Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir.1975); *Securities and Exchange Commission v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1100 (2d Cir.1972); *Securities and Exchange Commission v. Keller Corp.*, 323 F.2d 397 (7th Cir.1963); *Securities and Exchange Commission v. S & P National Corp.*, 360 F.2d 741, 747 (2d Cir.1966); *Securities and Exchange Commission v. Keller Corp.*, 323 F.2d 397 (7th Cir.1963); *Securities and Exchange Commission v. Boren*, 283 F.2d 312, 313 (2d Cir.1960).

This Court has jurisdiction over such suits pursuant to section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a), sections 21(e) and 27 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78u(e) and 78aa, and section 44 of the Investment Company Act, 15 U.S.C. § 80a–43.

Venue is found in this court based on the fact that various of the acts which are alleged to constitute violations of the Securities Act of 1933, the Securities Exchange Act of 1934 and the Investment Company Act occurred and are occurring within the Southern District of New York. 28 U.S.C. § 1391.

For purposes of the Securities Act, a "security" is defined in section 2(1), and has been expansively interpreted to include investment contracts where a person invests money in a common enterprise and is led to expect profits solely from the efforts of a third party, and evidences of indebtedness from one party to another. *Securities and Exchange Commission v. W.J. Howey Co.*, 328 U.S. 293, 298–299, 66 S.Ct. 1100, 1102–1103, 90 L.Ed. 1244 (1946); *Movielab, Inc. v. Berkey Photo, Inc.*, 452 F.2d 662 (2d Cir.1971). Specifically exempted from the definition of a security is "any security issued or guaranteed by the United States." Section 3(a)(2) of the Securities Act, 15 U.S.C. § 77c.

With respect to the registration of the two investment programs in question here, the SEC contends initially that both programs represent the offering of securities to the public. This argument has particular merit when applied to the Bill Program. That program is structured so that the actual owner of the Treasury Bills in question is ABT, not the investor. Rather, the investor receives a Safekeeping Receipt, which is little more than evidence that money has been remitted to ABT for a specific purpose. As such, the offerings under the Bill Program do not come within the ambit of the section 3(a)(2) exemption, and are clearly within the section 2(1) definition of a security.

Instruments which come within the section 2(1) definition of a security and are not otherwise exempted are required to be registered pursuant to section 6 of the Securi-

ties Act, 15 U.S.C. § 77f. Failure to register in and of itself is not a violation of the Securities Act. However, section 5, 15 U.S.C. § 77e, prohibits use of the mails or any "instruments of transportation or communication in interstate commerce" to promote or buy or sell any security which is not duly registered. It is uncontested that the interests of the investors in the Bill Program were not registered and were promoted and bought and sold using the mails and other means of transportation and communication in interstate commerce. Therefore, the SEC has made a *prima facie* showing that the Bill program violates sections 5(a) and 5(c).

With respect to the Commercial Paper Program, the determination whether the notes are securities is considerably less clear. Section 2(1) defines security to include any note. However, Section 3(a)(3), 15 U.S.C. § 77c(a)(3), exempts from the registration requirement of section 6,

> any note, draft, bill of exchange, or banker's acceptance which arises out of a current transaction or the proceeds of which have been or are to be used for current transactions, and which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, of any renewal thereof the maturity of which is likewise limited.

Taken on its face, this exemption appears to cover any commercial paper issued for current transactions. However, the House of Representatives, in reporting on this section, which was ultimately enacted without amendment, explained that the section "exempts short-term paper of the type available for discount at a Federal Reserve Bank and of a type which rarely is bought by private investors." H.R.Rep. No. 85, 73d Cong., 1st Sess. 15 (1933).

■ This same House Report was also relied upon by the SEC in promulgating Securities Act Release No. 4412 (September 20, 1961) ("Release 4412"). Release 4412 further narrows the applicability of section 3(a)(3) to commercial paper which satisfies four criteria: (1) is of "prime" quality; (2) is used to finance current transactions; (3) is not offered to the public; and, (4) is discountable at a Federal Reserve Bank. There is no question that the ABT Commercial Paper is offered to the public, and therefore fails to meet one of the criteria of Release 4412. This Court is obliged to accord substantial weight to the interpretations by the SEC of section 3(a)(3). *Zeller v. Bogue Electric Manufacturing Corp.*, 476 F.2d 795, 800 (2d Cir.), *cert. denied*, 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 146 (1973).*

■ However, "deference is not to be a device that emasculates the significance of judicial review. Judicial deference to an agency's interpretation of a statute only sets the framework for judicial analysis; it does not displace it" *Securities Industry Association v. Board of Governors of the Federal Reserve System*, —— U.S. ——, ——, 104 S.Ct. 2979, 2983, 82 L.Ed.2d 107 (1984), citing *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 24, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982), quoting *United States v. Cartwright*, 411 U.S. 546, 550, 93 S.Ct. 1713, 1716, 36 L.Ed.2d 528 (1973). Such judicial review of an agency interpretation must assess whether administrative constructions of a statute are "inconsistent with the statutory mandate or ... frustrate the policy that Congress sought to implement." *Securities Industry Association v. Board of Governors of the Federal Reserve System, supra*, quoting *Federal Election Commission v. Democratic Senatorial Campaign Commission*, 454 U.S. 27, 37, 102 S.Ct. 38, 44, 70 L.Ed.2d 23 (1981). As noted above, the Congressional intent in enacting the commercial paper exemption is clear from the legislative record. This is especially true with respect to the impropriety of offering such paper

---

* The SEC went on at length in its brief about the other criteria applicable in determining whether commercial paper is a security for Securities Act purposes. While the Court appreciates the exposition on this topic, much of the discussion was unnecessary given the authoritative case law in this Circuit and the inapplicability of cases dealing with notes of longer than nine months maturity.

to the general public, which is a salient feature of the Commercial Paper Program. Therefore, without determining whether the other factors enunciated in Release 4412 are consistent with Congressional intent in enacting the Securities Act, I find no inconsistency between section 3(a)(3) and the "no public offering" rule of Release 4412. Consequently, it is my holding that the commercial paper offered and sold by ABT is a security within the meaning of section 2(1) of the Securities Act. It is undisputed that the Commercial Paper Program is not registered pursuant to section 6, and is conducted through the mail and through other instruments of transportation and communication in interstate commerce. Consequently, I find that the SEC has made out a *prima facie* case that ABT conducted its Commercial Paper Program in violation of sections 5(a) and 5(c) of the Securities Act.

■ I also find that the interests in the Bill Program and the Commercial Paper Program sold by ABT are securities for purposes of the Exchange Act. With respect to the Bill Program, my holding above that the Safekeeping Receipts evidencing an investor's participation in that program constitute securities applies with equal force under the Exchange Act. *Tcherepnin v. Knight*, 389 U.S. 332, 342, 88 S.Ct. 548, 556, 19 L.Ed.2d 564 (1967). As regards the Commercial Paper Program, section 3(a)(10) of the Exchange Act, 15 U.S.C. § 78c(a)(10) exempts from the definition of a security for purposes of the Exchange Act "any note, draft, bill of exchange, or banker's acceptance, which has a maturity at the time of issuance not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited." The narrow words of this section of the statute, especially the nine-month maturity test, are not dispositive of the question whether this commercial paper is a security. *Securities and Exchange Commission v. Continental Commodities Corporation*, 497 F.2d 516, 523–4 (5th Cir.1974). Rather, commercial paper under section 3(a)(10) of the Exchange Act is subject to the same tests as

commercial paper claimed to be exempt pursuant to section 3(a)(3) of the Securities Act. *Zeller v. Bogue Electric Manufacturing Corp.*, 476 F.2d 795, 799 (2d Cir.), *cert. denied*, 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 146 (1973). Given my finding above that the commercial paper offered and sold by ABT falls outside the exemption of section 3(a)(3) and therefore is a security for purposes of the Securities Act because it is offered to the general public, it follows logically that it falls outside the exemption under section 3(a)(10) and is a security for purposes of the Exchange Act. *See also Sanders v. John Nuveen & Co., Inc.*, 463 F.2d 1075 (7th Cir.), *cert. denied*, 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972).

■ Furthermore, the fact that ABT received money from investors which it then invested for them brings ABT within the provisions of the Investment Company Act, ("ICA") 15 U.S.C. § 80a–1 *et seq.* Section 3(a)(1) of the ICA defines an investment company as "any issuer which is or holds itself out as being primarily ... in the business of investing, reinvesting or trading in securities." 15 U.S.C. § 80a–3(a)(1). As discussed above, ABT does precisely this when it issues the Safekeeping Receipts to customers and invests the money sent by those customers in United States Treasury Bills, and when it undertakes to invest customer funds in commercial paper offered by Service. The definition of security for purposes of ICA is contained in section 2(a)(36), and is identical to section 2(1) of the Securities Act. *Compare* 15 U.S.C. § 80a–2(a)(36) *and* 15 U.S.C. § 77b(1). Logically, then, by holding above that the Safekeeping Receipts are securities for purposes of the Securities Act applies with equal force under the Investment Company Act. Consequently, ABT is a statutory investment company as defined by section 3(a)(1) and is subject to the other provisions of the ICA. *NEA-New Hampshire Payroll Investment Plan*, [Current] Fed.Sec.L.Rep. ¶ 77, 429 (April 29, 1983).

██ As an investment company, ABT is required to register pursuant to section 8(a) of the ICA. 15 U.S.C. § 80a–8(a). Failure to so register pursuant to section 8(a) subjects an investment company to the prohibitions of section 7(a), 15 U.S.C. § 80a–7(a), to wit, "use of the mails or any means or instrumentality of interstate commerce" to offer or sell any securities, or redeem any securities; control of any investment company; engaging in any business in interstate commerce; or, controlling any company which is engaged in any business in interstate commerce, unless these activities are merely incidental to the dissolution of an investment company. It is uncontested that ABT has not so registered and is not in dissolution. I have held above that ABT used the mails and other instrumentalities of interstate commerce to offer and sell securities. Therefore, ABT is in violation of section 7(a) of the ICA.

██ Furthermore, Economou and P. Economou, officers of ABT, are liable for these violations as well, under section 48(a) of the ICA, 15 U.S.C. § 80a–47(a). Section 48(a) states that

It shall be unlawful for any person, directly or indirectly, to cause to be done any act or thing through or by means of any other person which it would be unlawful for such person to do under the provisions of this title or any rule, regulation, or order thereunder.

Section 48(a) of the ICA, analogous to the "controlling person" provisions of the Securities Act and the Exchange Act, 15 U.S.C. §§ 77o and 78t, respectively, applies to both Economous. Section 2(a)(28) defines "person" for purposes of the ICA to apply to both a "natural person or a company." 15 U.S.C. § 80a–2(a)(28). The Economous indisputably control the actions of ABT. Since one of those actions was a failure to register pursuant to section 8(a), the Economous caused that failure and are equally liable for the violation of section 7(a).

Turning to the SEC's allegations of fraud in violation of the Securities Act, the Exchange Act and the Investment Company Act, the starting point of a violation is a false statement or an omission of a material fact "if there is a substantial likelihood that a reasonable shareholder would consider it important" in deciding whether to buy or sell a security. *TSC Industries Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

The SEC alleges that the defendants violated the anti-fraud provisions with respect to ABT, the investment programs and the securities themselves. I find that the SEC has made out a *prima facie case* of those violations.

██ The failure of the defendants to disclose the previous injunction issued by another judge of this Court on application of the Commodity Futures Trading Commission is particularly egregious. *Commodity Futures Trading Commission v. The American Board of Trade, Inc., Arthur N. Economou, et al.*, 79 Civ. 2134 (VLB). The defendants went to some lengths to describe the praise heaped upon ABT and its investment programs by satisfied customers. While these claims may well be true, the permanent injunction entered by Judge Broderick is undeniable and is quite serious. It is clearly material. *Securities and Exchange Commission v. Manus.* [1981–1982] Fed.Sec.L.Rep. (CCH) ¶ 98, 307 (S.D.N.Y.1981). Defendant's argument that Judge Broderick's observation in the case before him that the defendant's position with respect to the activities in question had some validity is unavailing in face of the entry of the permanent injunction. Nor does the fact that the defendants have appealed the injunction vitiate the obligation to disclose the injunction. The appeal, if in fact there is one, may be material and, if so, its disclosure might be required, but the permanent injunction remains until vacated. Failure to disclose its existence is a violation of the anti-fraud provisions of the Securities Act and the Exchange Act if the defendants had a duty to disclose and acted with the requisite scienter. *Aaron v. Securities and Exchange Commission*, 446 U.S. 680, 100

S.Ct. 1945, 64 L.Ed.2d 611 (1980). I will turn to these elements presently.

As regards state legal proceedings relative to which the SEC claims violations of the anti-fraud provisions resulting from the failure of the defendants to disclose, the SEC has not briefed these issues and therefore apparently no longer relies on them. The Court takes no position regarding them. With respect to the remaining allegations, the Court agrees with the SEC that the misrepresentations and omissions (specifically, that letters from satisfied investors were on file with the SEC, that customers in the Bill Program own actual Treasury Bills, that such Bills are difficult for the average small investor to purchase, and the failure to disclose that the Bill Program was a pooled purchase arrangement whose assets were held in ABT's name, subject to claims against ABT) were material in that a reasonable investor would rely on such information in making an investment decision. *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976); *Mills v. The Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

Having held that these were failures to disclose material information, I now turn to the remaining elements of a violation of the anti-fraud provisions of the Securities Act and the Exchange Act: duty to disclose and scienter.

There is no question that ABT and Service, as issuers and sellers of securities, had a duty to disclose all material information necessary to make statements contained in their sales literature, or any other public information released by them in connection with the offer or sale of securities, accurate. *Securities and Exchange Commission v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 860–1 (2d Cir.1968), *cert. denied*, 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971), *reh. denied*, 404 U.S. 1064, 92 S.Ct. 733, 30 L.Ed.2d 753 (1972). Furthermore, as controlling persons of both ABT and Service, Economou and P. Economou bear the same duties pursuant to section 15 of the Securities Act, 15 U.S.C. § 77*o*, and

section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

Finally, the SEC must prove that the individual defendants acted with the requisite scienter. *Aaron v. Securities and Exchange Commission*, 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980). Scienter has been defined as a "mental state embracing the intent to deceive, manipulate or defraud," and includes recklessness. *Aaron*, 446 U.S. at 685, 100 S.Ct. at 1949; *Rolf v. Blyth Eastman Dillon & Co., Inc.*, 570 F.2d 38, 44 (2d Cir.), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978). This is especially true where, as here, the alleged violator owes a fiduciary duty to the defrauded party. Recklessness in this context includes knowing disregard for the truth. *United States v. Chiarella*, 588 F.2d 1358, 1371 (2d Cir. 1978), *rev'd on other grounds*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980); *Rolf v. Blyth Eastman Dillon & Co., Inc.*, 570 F.2d at 47. The individual defendants here, controlling persons of the corporate defendants, were in full possession of material information and directed the preparation of the communications which failed to fully disclose said information. The information in question was largely adverse to the highly self-touted reputation of the corporate defendants. These failures to disclose were at least reckless. Consequently, the individual defendants as well as the corporate defendants possessed the requisite scienter in failing to disclose material information. Therefore, it is my holding that these defendants violated the anti-fraud provisions of both the Securities Act and the Exchange Act, sections 17(a) and 10(b), respectively.

The final issue before the Court is whether the SEC has demonstrated a reasonable likelihood that the violations here will be repeated if the defendants are not enjoined. The defendants make much of the fact that when advised that the SEC considered their actions to be violative of the federal securities law, they first undertook to negotiate a settlement with the SEC prior to litigation, and, once litigation

had been commenced, the defendants moved to terminate the programs in question here and organized new programs which allegedly complied fully with the requirements of the securities laws. This argument is of little avail here. First, the fact that I have held above that the SEC has made out a prima facie case that the defendants were in violation of the securities law is of probative value in determining whether there is a likelihood of further violation. *Securities and Exchange Commission v. Keller Corp.*, 323 F.2d 397 (7th Cir.1963). Furthermore, the defendants failure to alter or terminate the violative programs until the SEC commenced this litigation leads me to believe that there is a strong likelihood that future violations will occur unless the defendants are enjoined.

This conclusion is supported by the fact that the defendants maintained that their violative actions were blameless, despite the clear law on the subject, well after litigation was commenced, and that the defendants essentially tried to defend themselves by attempting to divert the Court's attention to, variously, the First Amendment, the "bad faith" of the SEC, "waiver" by the SEC of its right to enforce the federal securities laws against these defendants, and allegations of a plot by the International Business Machines Corporation and Merrill Lynch and Company to drive the defendants out of business. These arguments are unavailing. *Securities and Exchange Commission v. Management Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir.1975); *Securities and Exchange Commission v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1100 (2d Cir.1972); *Securities and Exchange Commission v. S & P National Corp.*, 360 F.2d 741, 747 (2d Cir.1966).

In conclusion, I find that the SEC has made out a strong prima facie case of prior violations and demonstrated a grave likelihood that violations will occur in the future if the defendants are not enjoined. Therefore, it is hereby

ORDERED that each of the defendants be PRELIMINARY ENJOINED from vio-

lating the federal securities laws, including but not limited to the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, the Securities and Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, and the Investment Company Act, 15 U.S.C. § 80a–1 *et seq.* It is further ORDERED that the previously imposed stay on discovery is VACATED.

SO ORDERED.