**Mahmoud FUSTOK, Plaintiff,**

v.

**CONTICOMMODITY SERVICES, INC., Conticapital Management, Inc., Continental Grain Company, Walter M. Goldschmidt, Norton Waltuch, Tom Waldeck and Ivan Auer, Defendants.**

No. 82 Civ. 1538(MEL).

United States District Court, S.D. New York.

Sept. 20, 1985.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for plaintiff; Herbert Stoller, New York City, of counsel.

Sidley & Austin, New York City, for defendant Continental Grain Co.; Lawrence H. Hunt, Jr., David T. Pritikin, Marc J. Gottridge, New York City, of counsel.

Parker Auspitz Neesemann & Delehanty P.C., New York City, for defendant Walter Goldschmidt; Jack C. Auspitz, Hollis L. Hyans, New York City, of counsel.

LASKER, District Judge.

In another of a seemingly unending stream of motions by all parties defendants Walter Goldschmidt and Continental Grain Company ("ContiGrain") move pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings dismissing Fustok's twenty-first claim. The facts in this action for fraud in connection with various silver transactions involving Fustok's commodity trading account with ContiCommodity Services, Inc. ("Conti") are set forth in, among other decisions, *Fustok v. Conti-Commodity Services, Inc.*, 577 F.Supp. 852, 853–55 (S.D.N.Y.1984).

According to the allegations in the Second Amended Complaint,[1] which we accept as true for the purposes of this motion, in 1979–1980 Goldschmidt was an officer and employee of ContiGrain (a corporation engaged in the business of trading and dealing in commodities and futures contracts) and president of Conti, a registered Futures Commission Merchant ("FCM") and a wholly owned subsidiary of ContiGrain. The twenty-first claim asserts that Goldschmidt breached his duty under 17 C.F.R. 166.3 to "diligently supervise" defendant Norton Walduch's handling of Fustok's ac-

---

1. The defendants filed a motion for judgment on the pleadings dismissing the twenty-first claim in the Amended Complaint on January 16, 1985. Fustok subsequently filed a Second Amended Complaint on August 6, 1985 which contains the identical twenty-first claim. Accordingly, we treat the defendants' motion as a motion for judgment on the pleadings dismissing the twenty-first claim of the Second Amended Complaint.

count in 1979–1980.[2] Fustok asserts that ContiGrain also is liable for Goldschmidt's alleged failure to supervise. Although it is not clear from the Second Amended Complaint, Fustok's theory in this regard apparently is that ContiGrain is liable under the doctrine of *respondeat superior.* See Plaintiff's Memorandum in Opposition at 3 (filed Feb. 5, 1985). The defendants move for judgment on the pleadings dismissing the claim for failure to state a cause of action on the ground that there is no implied right of action under Rule 166.3. For the reasons set forth below the motion is granted.

Rule 166.3 was promulgated by the Commodities Futures Trading Commission ("CFTC" or "the Commission") pursuant to its rulemaking authority under the Commodity Exchange Act ("CEA" or "the Act"), 7 U.S.C. §§ 1–24 (1976 and Supp. III 1979). The rule states in relevant portion:

§ 166.3 Supervision

Each Commission registrant ... must diligently supervise the handling of all commodity interest accounts carried, operated or advised by the registrant and all other activities of its partners, officers, employees and agents (or persons occupying a similar status or performing a similar function) relating to its business as a Commission registrant.

The defendants argue, first, that *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982) does not recognize an implied cause of action under Rule 166.3. They assert further, upon the *Curran* Court's reasoning, that since a right of action under Rule 166.3 had not been implied before 1974, the date that comprehensive amendments to the CEA were passed, it should not be created thereafter. Fustok responds that, contrary to the defendants' interpretation of the decision, *Curran* sup-

ports the existence of a private right of action because *Curran* held that there is a right of action under CEA § 4b, 7 U.S.C. § 6b, and Rule 166.3 was enacted pursuant to the Commission's rulemaking authority under that section.

We do not consider *Curran* to be controlling here because whether Rule 166.3 may support a private right of action was not raised by the parties, nor considered by the Court. *See Taylor v. Bear Stearns & Co.,* 572 F.Supp. 667, 676–77 (N.D.Ga.1983). *Curran* held that investors may sue a broker for fraud pursuant to, *inter alia,* CEA § 4b, 7 U.S.C. § 6b, *see Curran,* 456 U.S. at 390–91, 102 S.Ct. at 1845–46, and that "exchanges can be held accountable for breaching their statutory duties to enforce their own rules...." *Id.* at 394, 102 S.Ct. at 1847.[3] Justice Stevens, writing for the five to four majority, explained that on the facts before the Court, the controlling question was not whether Congress intended to create a new cause of action when it passed the 1974 amendments to the CEA but rather, whether Congress intended to eliminate remedies already available under the Act. *Id.* at 378–79, 102 S.Ct. at 1839–40. The *Curran* majority then concluded that the comprehensive reevaluation of the CEA undertaken by Congress and resulting in the Commodities Futures Trading Commission Act of 1974, 88 Stat. 1389, left unchanged the statutory provisions pursuant to which federal courts had previously implied a cause of action and that this was "evidence that Congress affirmatively intended to preserve that remedy." *Id.* at 381–82, 102 S.Ct. at 1840–41.

The *Curran* rationale does not foreclose implying a private right of action after 1974 under Rule 166.3 because the rule was not enacted until 1978. *See generally* 43 Fed.Reg. 31,886–91 (1978). Congress' action in 1974 does not have the same implica-

---

**2.** The twenty-first claim also alleges that Goldschmidt was under a duty to supervise under common law and under the CEA, 7 U.S.C. §§ 1 *et seq.* However, Fustok apparently concedes that, as the defendants argue, (1) he has not alleged the elements of a CEA fraud claim, and

(2) the common law does not recognize the duty he describes.

**3.** At issue in *Curran* were CEA §§ 4b, 9(b), 4a, 5(d) and 5a(8), 7 U.S.C. §§ 6b, 13(b), 6a, 7(d) and 7a(8) (1976 and Supp. IV), respectively. *See* 456 U.S. at 372 n. 49, 102 S.Ct. at 1836 n. 49.

tion as to a rule passed in 1978 as the *Curran* court held that it did concerning pre-1974 provisions.

Nor is Fustok's argument persuasive. The authority for the proposition that Rule 166.3 was promulgated pursuant to the Commission's rulemaking power under CEA § 4b, 7 U.S.C. § 6b, appears in the preamble to Part 166 of the C.F.R. which reads: "AUTHORITY: ... 7 U.S.C. 6b, 6c(b), 6g(1), 6*l*, 6*o* and 12a(5)...." However, Part 166 includes several different provisions and it is unclear whether each provision is enacted pursuant to all of the sections enumerated. Nonetheless, even assuming that Fustok is correct, in our view it would be an unwarranted analytical leap to conclude that in the absence of allegations sufficient to invoke section 4b an independent right of action exists based solely on Rule 166.3 since the Commission, as a regulatory agency, does not have the authority to broaden the scope of the Act beyond what Congress intended. *See Securities Industry Association v. Board of Governors of the Federal Reserve System,* —— U.S. ——, 104 S.Ct. 2979, 2983, 82 L.Ed.2d 107 (1984); *Federal Election Commission v. Democratic Senatorial Campaign Commission,* 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981); *Securities Exchange Commission v. American Board of Trade, Inc.,* 593 F.Supp. 335, 339 (S.D.N.Y.1984).

In sum, we conclude that *Curran* neither supports nor precludes an implied right of action under Rule 166.3. The issue apparently is one of first impression in this Circuit. *But cf. Sherman v. Sokoloff,* 570 F.Supp. 1266, 1271 (S.D.N.Y.1983) (Court assumes without discussion that right of action may exist under Rule 166.3 but grants summary judgment for the defendants.)

The primary ground upon which the defendants attack the twenty-first claim is that, *Curran* aside, Congress never intended to provide for a private right of action under Rule 166.3. In this regard the defendants argue that Fustok's claim against Goldschmidt for breach of his supervisory duties is a form of "derivative" or "secondary" liability, i.e., based solely on his status as supervisor, without proof of any involvement in the underlying scheme. They assert that this claim is therefore analogous to a claim under the CEA for aiding and abetting, and liability imposed upon "controlling persons". *See* Commodities Exchange Act §§ 13(a) and (b), 7 U.S.C. § 13c(a) (1976) and 7 U.S.C.A. § 13c(b) (Supp.1985). Based upon this analogy the defendants argue that implying a right of action from Rule 166.3 would be contrary to congressional intent because (1) there was no provision imposing liability on a "controlling person" until the 1982 CEA amendments and those amendments limit "controlling person" liability to enforcement actions brought by the CFTC; (2) until 1983 the CEA limited liability for aiding and abetting to administrative proceedings; and (3) Rule 166.3 does not include the safeguards that Congress included in the 1983 amendments restricting the circumstances under which "aiding and abetting" and "controlling person" liability may be imposed.

Fustok responds that *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), supports an implied right of action pursuant to Rule 166.3 because (1) Fustok is a member of the class for whose "especial benefit" the rule was enacted, *see id.* at 78, 95 S.Ct. at 2087; (2) there is no record of the Legislature's intent to deny such a remedy; and (3) such an action is consistent with the antifraud prohibitions in the CEA's overall regulatory scheme.[4]

---

**4.** In a May 1985 letter to the court Fustok has brought to our attention a decision in which an administrative law judge held that the vice president of a commodity brokerage firm was liable to a customer for breaching his responsibilities under Rule 166.3. *Kalkstein v. Delphi Commodities, Inc.,* [Current Transfer Binder] COMM.FUT.

L.REP. (CCH) ¶ 22,555 (CFTC April 18, 1985). However, in 1979–80 when Fustok's rights accrued, not every remedy available in an administrative proceeding could also be pressed in a federal action. *Cf. Strax v. Commodity Exchange, Inc.,* 524 F.Supp. 936, 944 (S.D.N.Y. 1981) (holding an "aider and abettor" could only

To maintain a cause of action based upon Rule 166.3 Fustok must establish that a right of action existed at the time his claim arose in 1979–1980. *See Bennett v. E.F. Hutton Co.,* 597 F.Supp. 1547 (N.D.Ohio 1984). Congress did not discuss whether a private individual could maintain an action under the CEA until 1982 when it once again examined the Act with a special emphasis on, *inter alia,* enforcement and remedies for violations of the Act. Futures Trading Act of 1982, Pub.L. No. 97–444, 96 Stat. 2322. The legislative activity resulted in several amendments which became effective in 1983, including, for the first time, an express provision granting private rights of action. *Id.* § 235. It is true that Congress never explicitly discussed the availability (or non-availability) of a private action resting on Rule 166.3. Nor is the provision of the 1983 amendments providing private rights of action retroactive. *See* Commodities Exchange Act § 22(d), 7 U.S.C.A. § 25(d) (Supp.1985). For these two reasons the 1983 amendments and the legislative history surrounding them have no direct bearing on Fustok's twenty-first claim. Nevertheless, to the extent that the 1982 legislative history is not inconsistent with Congress' previous expressions, it is a relevant consideration in determining whether implying a right of action under Rule 166.3 is consistent with the regulatory scheme of the Act. *Cf. Sam Wong & Son, Inc. v. New York Mercantile Exchange,* 735 F.2d 653, 676 n. 30 (2d Cir.1984) (agreeing with the district court's statement that although the 1983 amendment providing for private rights of action has only prospective effect, the policies of the new provision are relevant considerations "where accrued rights have not yet been identified." *Jordon v. New York Mercantile Exchange,* 571 F.Supp. 1530, 1540 (S.D.N.Y.1983)).

A person may be held liable under the CEA for aiding and abetting when he assists another to commit a (prohibited) act.

*See, e.g.,* H.R.REP. NO. 565, 97th Cong., 2d Sess. 53, *reprinted in* 1982 U.S.CODE CONG. & AD.NEWS 3871, 3902. Nonetheless, such liability is not premised solely on the acts of another, but upon his own acts which he carries out for the purpose of assisting another to violate the CEA. Accordingly, we do not consider "aiding and abetting" liability to be a true form of "derivative" liability. We therefore find the aiding and abetting provisions, and the accompanying legislative history, inapplicable to the question presented here.

On the other hand, CEA § 13(b), 7 U.S.C.A. § 13c(b) provides:

> Any person who, directly or indirectly, controls any person who has violated any provision of this chapter or any of the rules, regulations, or orders issued pursuant to this chapter may be held liable for such violation *in any action brought by the Commission* to the same extent as such controlled person. In such action, the Commission has the burden of proving that the controlling person did not act in good faith or knowingly induced, directly or indirectly, the act or acts constituting the violation. (emphasis supplied).

The provision was enacted to "make clear that a person who directly or indirectly controls another person (or entity) which violates the Act, would himself be liable as a principal to the same extent as the controlled person." H.R.REP. NO. 565 at 53, *reprinted in* 1982 U.S.CODE CONG. & AD.NEWS at 3902.

This basis of liability is "derivative" as we interpret that term, and is similar to the type of liability which Fustok seeks to impose on Goldschmidt as Waltuch's supervisor. Indeed, the language of the statute and the House Report could well have been describing Fustok's twenty-first claim. Accordingly, we look to the "controlling person" provision in the CEA to provide us with some insight as to where this form of

---

be held liable in administrative proceedings). We therefore consider *Kalkstein* to have limited

precedential value.

secondary liability fits in the regulatory scheme envisioned by Congress.

The plain language of both the statute and the House Report limit the relief under the provision to actions brought by the Commission. Moreover, when Congress did not wish to limit a remedy to an action brought only by the CFTC it made its intention clear by affirmatively deleting such restrictive language. *Compare* CEA § 13(b), 7 U.S.C. § 13c(b) (controlling person) *with* CEA 13(a), 7 U.S.C. § 13c(a) (aiding and abetting). *See also* CEA § 22(a)(1), 7 U.S.C. § 25(a)(1) (providing for private rights of action for aiding and abetting); *compare also* CEA § 13(a), 7 U.S.C. § 13c(a) (1976) *with* CEA § 13(a), 7 U.S. C.A. § 13c(a) (Supp.1985) (deleting provision which restricts relief for aiding and abetting to "administrative proceedings"). Further, Congress' concern in limiting liability under this provision is apparent throughout the legislative debates. Notably, Congress rejected the version of the controlling persons provision which was advocated by the CFTC that would have imposed a broader scope of liability than the statute does in its present form. *See, e.g.,* H.R.REP. NO. 565 at 126, *reprinted in* U.S.CODE CONG. & AD.NEWS at 3975. ("This proposal met with strong resistance. . . .") We find the congressional expressions to be evidence that Congress did not intend derivative liability actions of this nature to be brought by private citizens. Accordingly, we conclude that a private right of action under Rule 166.3 may not be implied.

Fustok's not capricious argument that Rule 166.3 was enacted for the "especial benefit" of customers like himself does not compel a contrary conclusion. In asserting this proposition Fustok correctly points to one of the criteria identified in *Cort v. Ash,* 422 U.S. at 78, 95 S.Ct. at 2087, for determining whether a cause of action should be implied. Nonetheless, the critical, indeed dispositive, focus of the inquiry is whether "Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co. v. Redington,*

442 U.S. 560, 575, 99 S.Ct. 2479, 2488, 61 L.Ed.2d 82 (1979).

It is true that Rule 166.3 was enacted by the CFTC as one of several "Customer Protection Rules", *see* 43 Fed.Reg. 31,886–91 (1978), and that the CFTC stated that the rules were "to provide greater protections to the customers of commodity firms." *Id.* at 31,886. However, the expressions of the CFTC as a regulatory agency may or may not be consistent with or probative of Congress' purpose, *see Securities Industry Association v. Board of Governors of the Federal Reserve System,* 104 S.Ct. at 2983, and, in any event, are not a part of the legislative history of the Act.

Nor, as Fustok seems to believe, does it automatically follow that a rule which inheres to the customers' benefit gives rise to a federal private right of action. As we view the legislative history of the CEA, Congress intended to provide for a *dual* regulatory scheme with the right to bring actions for violations shared by the CFTC and private litigants. However, we find nothing in the legislative history which indicates that Congress intended the rights of the CFTC and the rights of investors to be identical. Indeed, the House Report makes clear that the Commission bears the primary responsibility of insuring compliance with the Act and the rules and regulations promulgated thereunder:

> The availability of these remedies-reparations, arbitration and private rights of action-supplements, but does not substitute, for the regulatory and enforcement program of the CFTC and self-regulatory agencies. The [Agricultural] *Committee fully expects that these agencies will vigorously use the tools at its command to protect the investing public so that it does not become necessary to rely on private litigants as a policeman* [sic] *of the Commodity Exchange Act.* H.R. REP. NO. 565 at 57, *reprinted in* U.S. CODE CONG. & AD.NEWS at 3906. (Emphasis supplied).

As is frequently the case when the courts are called upon to divine legislative intent, resolution of the issue is not free

from doubt. Nonetheless, for the foregoing reasons we conclude that Fustok may not maintain an action based solely on a violation of Rule 166.3. Since such a right is a necessary predicate for Fustok's claim against ContiGrain, this claim also fails.

Judgment is granted on the twenty-first claim of the Second Amended Complaint and the claim is dismissed.

Submit judgment on notice.