## SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

## The AMERICAN BOARD OF TRADE, INC., Arthur N. Economou, Phyllis H. Economou and The American Board of Trade Service Corp., Defendants.

### No. 83 Civ. 6213 (SWK).

United States District Court, S.D. New York.

July 26, 1990.

---

Nathan M. Fuchs, New York City, for plaintiff Securities and Exchange Com'n.

Arthur N. Economou, New York City, defendant pro se.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This case now comes before the Court on plaintiff Securities and Exchange Commission's ("SEC" or "Commission") motion for partial summary judgment pursuant to Fed.R.Civ.P. 56 as to alleged violations of sections 5(a) and 5(c) of the Securities Act of 1933 ("the Registration Provisions"), 15 U.S.C. §§ 77e(a) and 77e(c) by the individual defendants, Arthur N. Economou and Phyllis H. Economou ("A. Economou," "P. Economou," collectively, "the Economous"), proceeding *pro se,* and for voluntary dismissal with prejudice of its other claims against all defendants pursuant to Fed.R.Civ.P. 41(a)(2). The Court is not considering any motions with respect to the alleged violations of the Registration Provisions by the corporate defendants. The SEC seeks a permanent injunction against

further violation of the Registration Provisions by the Economous, pursuant to section 20(b) of the Securities Act of 1933 ("the 1933 Act"), 15 U.S.C. § 77t(b).

## BACKGROUND

This opinion follows numerous other opinions in this case, by both this Court and the Second Circuit, familiarity with which is assumed. The relevant facts of this case, recounted on many prior occasions, will be only briefly reviewed here. Because the SEC has requested summary judgment only with respect to its claim that the individual defendants violated the Registration Provisions by their role in ABT's sale of the commercial paper, the Court will briefly recapitulate only those facts surrounding ABT's sale of the notes.[1]

This case arose from the sale to investors of interests in Treasury Bills and of commercial paper by defendant American Board of Trade, Inc. ("ABT"). ABT's commercial paper program involved the sale of notes at a discount to investors, with maturities of three or six months, in small denominations. In an opinion affirmed by the Second Circuit, this Court found that ABT's commercial paper was a security within the meaning of the 1933 Act. *S.E.C. v. American Board of Trade, Inc.,* 593 F.Supp. 335, 340 (S.D.N.Y.), *aff'd,* 751 F.2d 529, 539–40 (2d Cir.1984). On July 25, 1985, the Court issued an injunction prohibiting ABT and American Board of Trade Service Corp. ("Service") from selling its commercial paper in violation of the registration provisions of the 1933 Act. At the same time that injunction was granted, the Court granted a stay pending registration of the ABT commercial paper in accordance

with the 1933 Act. *Securities and Exchange Commission v. American Board of Trade,* [1985–86 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 92,224 (S.D.N.Y. July 26, 1985) (1985 WL 2165). ABT, however, refused to make available the certified financial statements required for the registration process. Thus, this Court lifted the stay on the previously-issued injunction, and further enjoined defendants from redeeming maturing commercial paper. The Court's second injunction became effective on July 18, 1986 after affirmance by the Second Circuit. *Securities and Exchange Commission v. American Board of Trade,* 798 F.2d 45, 47 (2d Cir.1986). A Special Master was appointed to provide an accounting of ABT's finances and to supervise the winding down of the commercial paper program.

Shortly after the injunction against sale and redemption of ABT commercial paper issued, the Court ordered a freeze on the assets of ABT's commercial paper program to guard against further depletion of the program's assets. The Court also ordered appointment of an interim receiver for all of the ABT entities. In the course of its September 2, 1986 Order, the Court noted Economou's repeated violations of orders and injunctions. After the injunction against sale and redemption of ABT commercial paper became effective, A. Economou caused ABT to redeem commercial paper held by over 100 investors. *S.E.C. v. American Board of Trade, Inc.,* 645 F.Supp. 1047, 1052 (S.D.N.Y.1986). Further, without the required approval of the Special Master, ABT used its funds to send a bulletin to its commercial paper holders.[2] The Court found that there were willful and knowing violations. In addition, the

---

**1.** Since the SEC has moved for voluntary dismissal with prejudice of all claims related to ABT's sale of interests in treasury bills, the Court will forego explanation of that program. The Court will not describe the details surrounding the promissory note and Treasury Bill programs, nor will there be a lengthy discussion of the prior litigation surrounding these programs. A description of the Treasury Bill program can be found in the Second Circuit opinion reviewing this Court's issuance of a preliminary injunction. *S.E.C. v. American Board of Trade, Inc.,* 751 F.2d 529, 531 (2d Cir.1984). Detailed information regarding the promissory note program can be found in the Court's opin-

ion regarding the motion of the Special Master and Receiver to disallow certain claims against ABT. *S.E.C. v. American Board of Trade,* 719 F.Supp. 186, 187–92 (S.D.N.Y.1989), *aff'd,* 909 F.2d 1473 (2d Cir.1990).

**2.** After Economou had sent two "bulletins" to the holders of ABT commercial paper containing grossly misleading information concerning the instant litigation, the Court issued an order prohibiting further such contact without approval. This order was affirmed in relevant part by the Second Circuit. *Securities and Exchange Commission v. American Board of Trade,*

Economomous disclosed to the Special Master that they had "borrowed" in excess of $500,000 from ABT to pay their taxes and that those "loans" had never been repaid. Finally, there were $5 million in unexplained ABT disbursements after June 1, 1986, and there was evidence that funds from ABT's commercial paper program were being used to meet the operational expenses of other ABT entities, in particular Arthur N. Economou & Co., Inc. Therefore, for the protection of the assets of the commercial paper program, the Court expanded its original freeze order to include all ABT entities [3] and appointed an interim receiver.

A. Economou was subsequently found guilty of two counts of criminal contempt. In addition, he was found liable for civil contempt and ordered to pay restitution of $175,000 to ABT from personal funds. The Second Circuit affirmed these findings against Economou.

The report of the Special Master, dated November 5, 1986 revealed that ABT's liquid assets were short of its liabilities by $55,312,445. Recognizing that ABT's chances of recovery from its gross insolvency were dim, the Court ordered the appointment of a receiver and liquidation of the ABT Entities. A. Economou has paid ABT only $35,000 of the $175,000 restitution and has paid none of the acknowledged $500,000 debt to ABT. The Economous continue to assert claims against ABT assets.[4]

## DISCUSSION

*Summary Judgment*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). In testing whether the movant has met this burden, the Court must resolve all ambiguities against the movant. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608; 26 L.Ed.2d 142 (1970). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).[5] The non-moving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. To avoid summary judgment, enough evidence must favor the non-moving party's case such that a jury could return a verdict in

*Inc.*, 830 F.2d 431, 442 (2d Cir.1987), *cert. denied*, 485 U.S. 938, 108 S.Ct. 1118, 99 L.Ed.2d 278 (1988).

3. *See S.E.C. v. American Board of Trade, Inc., supra*, 645 F.Supp. at 1054 (list of 33 ABT entities in Appendix A).

4. The Court disallowed several of the Economous' claims, finding that they were unsubstantiated by the records of ABT or, in the alternative, that they should be subordinated to the claims of other creditors including the holders of ABT commercial paper.

5. The moving party may rely on the evidence in the record to point out the absence of genuine issues of material fact. *Celotex, supra*, 477 U.S. at 323, 106 S.Ct. at 2552. The moving party does not have the burden of providing evidence to negate the non-moving party's claims. *Id.* As the Supreme Court recently noted, "whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

its favor. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (interpreting the "genuineness" requirement).

■ In this claim for permanent injunction, summary judgment will be appropriate if there is no genuine issue of material fact as to the existence of a prior violation of the securities laws, and as to the "reasonable likelihood" that the violation will be repeated. *Securities and Exchange Commission v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1100 (2d Cir.1972) (citing *SEC v. Culpepper,* 270 F.2d 241, 249 (2d Cir.1959); and *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)). Trial courts have broad discretion in granting injunctive relief pursuant to the provisions of the 1933 Act. *Manor Nursing Centers, supra,* 458 F.2d at 1100.

■ There can be no genuine dispute that the Economous violated the Registration Provisions. Both this Court and the Second Circuit have found that the commercial paper issued by ABT are securities within the meaning of the 1933 Act, and must therefore be registered with the Securities and Exchange Commission pursuant to the Registration Provisions. *S.E.C. v. American Board of Trade, Inc.,* 593 F.Supp. 335, 340 (S.D.N.Y.), *aff'd,* 751 F.2d 529, 539–40 (2d Cir.1984). There is no question that the ABT commercial paper was never actually registered. As "controlling persons" of ABT, the individual defendants are responsible under section 15 of the 1933 Act (15 U.S.C. § 77*o*) for violations of the Registration Provisions by the corporate defendants.[6] Thus, there is no genuine issue of fact as to the first requirement for issuance of a permanent injunction against the individual defendants.

■ Similarly, as to the likelihood of future violations by the individual defendants, the Court finds no genuine issue of material fact. The likelihood of future illegal conduct is "strongly suggested" by past illegal activity. Further, where prior violations have been shown, a permanent injunction may be appropriate even in the face of "defendant's disclaimer of an intent to violate the law in the future, or even ... cessation of the illegal acts...." *Securities and Exchange Commission v. Management Dynamics, Inc.,* 515 F.2d 801, 807 (2d Cir.1975) (citing *Manor Nursing, supra,* 458 F.2d at 1100). In considering the propriety of a permanent injunction, trial courts should consider:

> ... the likelihood of future violation, the degree of scienter involved, the sincerity of defendant's assurances against future violations, the isolated or recurrent nature of the infraction, defendant's recognition of the wrongful nature of his conduct, and the likelihood, because of defendant's professional occupation, that future violations might occur.

*Securities and Exchange Commission v. Tome,* 638 F.Supp. 596, 628 (S.D.N.Y.1986) (quoting *Securities and Exchange Commission v. Universal Major Industries Corp.,* 546 F.2d 1044, 1048 (2d Cir.1976), *cert. denied,* 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95).

In *Securities and Exchange Commission v. Commonwealth Chemical Securities, Inc.,* 574 F.2d 90, 98–100 (2d Cir.1978), the Second Circuit affirmed this Court's finding of violations of the 1933 Act, the Securities and Exchange Act of 1934, and the Investment Company Act of 1940, and its permanent injunction prohibiting further violation by defendant. On appeal in that case, defendants argued that the injunction was improper because the last violation occurred 15 months before the institution of litigation by the SEC, and three years before the injunction issued. Defendants further pointed out that they had been in the securities business for only a short period of time, that their involvement with the securities business had ceased before the injunction issued, and that, pursuant to the provisions of an agreement with the SEC, they could not return to the secu-

---

**6.** The parties do not dispute the status of the individual defendants as controlling individuals of ABT and Service, and the record lacks any evidence suggesting that the individual defendants were not in fact in control of ABT during the period of time relevant to this opinion.

rities business without permission. The Second Circuit, however, rejected defendants' arguments, upholding the exercise of discretion by the trial court.

Here, undisputed facts in the record establish an even greater likelihood of future violations. The Economou have been involved with the securities markets since at least 1965. Defendants identify four securities businesses "conceived and launched by A. Economou," one founded as recently as August, 1989. Defendants' Memorandum, at 99. Thus, defendants have made their careers in the securities business, and exhibit an intent to remain so involved in the future. Further, prior to the initiation of the instant lawsuit, defendants engaged in a pattern of repeated violations of the Registration Provisions, stretching at minimum from 1969 to 1983. *Securities and Exchange Commission v. American Board of Trade, Inc.*, 654 F.Supp. 361, 365 (S.D.N.Y.1987). While defendants may not have known at the time that their behavior violated the Registration Provisions, they have subsequently shown no recognition of the illegal nature of their conduct. Rather, defendants continue to claim that the SEC brought the instant lawsuit in bad faith in an effort to destroy ABT.

Finally, defendants' conduct during the attempt to register the ABT commercial paper indicates a propensity for future violation of the securities laws. In an effort to avoid disclosure of ABT's finances, defendants created a new corporation, The American Board of Trade National Market System, Inc. ("ABTNMS"), which was to assume the liabilities of the commercial paper program. Defendants then attempted to disclose the finances of the untried ABTNMS, rather than make the required disclosures concerning ABT. The Second Circuit held that disclosure of ABT's finances was required by the 1933 Act, and that the requisite disclosures could not be avoided "simply by the creation of new corporate shells." *S.E.C. v. American Board of Trade, Inc.*, 798 F.2d 45, 46–47 (2d Cir.1986). The Court therefore concludes that the record presents no genuine issue of material fact as to the likelihood of

defendants to violate the Registration Provisions in the future.

The 100–page brief and Rule 3(g) statement submitted by the Economous need not long detain the Court. Defendants' brief, in large part a verbatim, 85–page reprint of a bankruptcy court opinion, concerns itself primarily with irrelevant citations and references to bankruptcy law and with allegations of bad faith on the part of the SEC. Defendants' 3(g) statement does little more than make conclusory allegations as to the inappropriateness of several prior rulings both of this Court and of the Second Circuit, and as to the alleged bad faith of the SEC. Nowhere do defendants raise any issue of material fact relating to their past violations of the Registration Provisions, or to their propensity to do so again in the future.

Because the Court finds no genuine issue of material fact as to the alleged violation of sections 5(a) and 5(c) of the 1933 Act or as to the likelihood of future violation by the individual defendants, plaintiff's motion for partial summary judgment pursuant to Fed.R.Civ.P. 56 is granted. The Economous are permanently enjoined from future violations of sections 5(a) and 5(c) of the Securities Act of 1933.

*Voluntary Dismissal*

A voluntary dismissal may, at the discretion of the trial court, be granted if prejudice will not result to the other party. *Kern v. TXO Production Corp.*, 738 F.2d 968, 970 (8th Cir.1984). Plaintiff here has requested dismissal with prejudice of its first through fifth and seventh through ninth causes of action. Defendants have presented no argument in opposition to this motion. Because the dismissal will be with prejudice, there can be no adverse effect on defendants here. Therefore, plaintiff's motion for voluntary dismissal pursuant to Fed.R.Civ.P. 41(a)(2) is granted.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment on its sixth cause of action as to the individual defendants is granted, permanently enjoining the individual defendants from further

violation of sections 5(a) and 5(c) of the Securities Act of 1933. Plaintiff's motion for voluntary dismissal with prejudice, pursuant to Fed.R.Civ.P. 41(a)(2) of its remaining claims, with the exception of one claim against the corporate defendants, is also granted.[7]

SO ORDERED.

---

7. This Opinion and Order does not dispose of the alleged violations of the Registration Provisions by the corporate defendants stemming from the commercial paper program. The SEC has indicated that, after the liquidation of the ABT entities is complete, it will move for similar dismissal of that claim.